WILLIAM P. VAN RENSSELAER, Respondent, *v.* BENJAMIN G. DENNISON, Appellant.

Any conveyance in fee of lands in this State, made since 1787, by one person to another, operates, in law, as a deed of assignment, and not as a deed of lease; leaving in the assignor neither any reversion nor the possibility thereof, nor any interest or estate whatever in the land.

Since the act of 1787, concerning tenures, it has been impossible to create a feudal tenure in lands in this State, and, consequently, none of the incidents peculiar to such tenures can attach to estates granted by one citizen to another.

The estate granted or assigned cannot be made subject to conditions implied by law in favor of the grantor; as that the grantee shall not alien, or shall render service or rent, and, in case of default, shall forfeit his estate. Such rules, and others of feudal extraction, which result from the obligations arising out of feudal relations, are now abrogated.

But the assignee of the estate may be made liable to conditions of rents and services, whenever such conditions are inserted in the deed of assignment, and are consistent with the general rules of law. This is wholly independent of the tenure of the land.

Any valid condition thus created and expressly mentioned in the conveyance in fee may run with the land, and bind the heirs and assigns of the grantee, wholly independent of tenure, and also independent of privity of contract or estate.

Prior to the adoption of the Constitution of 1846, there was no rule of law in this State prohibiting the reservation of a perpetual yearly rent in a grant of land in fee, as a condition of the estate.

ACTION to recover the possession of real estate, consisting of a farm in Greenbush, in the county of Rensselaer, containing 201$\frac{4}{10}$ acres, particularly described in the complaint.

The action was commenced in October, 1861. On the trial, before a referee, it was proved, on the part of the plaintiff, that, on the 4th of November, 1789, Stephen Van Rensselaer, since deceased, and Jacob Van Iveren and Gysbert Van Iveren, mutually executed and delivered an indenture in duplicate, bearing date on that day, whereby the said Stephen, in consideration of a nominal sum of money, then paid to him, and of the yearly rents, covenants and conditions provided for and contained in said indenture, granted and sold to the said Jacob and Gysbert the same premises described

in the complaint, *habendum* to the said Jacob and Gysbert, their heirs and assigns forever; yielding and paying therefor yearly, and every year during the continuance of said grant, unto the said Stephen, his heirs and assigns, the yearly rent of twenty-six skipples of good merchantable winter wheat, and four fat fowls, and to perform one day's service with carriage and horses on the 1st day of January, 1791, next ensuing the making of said indenture, and thereafter in and upon the first day of January in each year, which said yearly rent so reserved the said Jacob and Gysbert did thereby for themselves, their heirs, executors, administrators and assigns, covenant, promise and agree to and with said Stephen, his heirs and assigns, that they, the said Jacob and Gysbert, their heirs, executors, administrators and assigns, should and would, well and truly pay, or cause to be paid, to the said Stephen, his heirs or assigns, at the days and place and in the manner specified in the indenture as aforesaid, in each year. The said indenture also provided that, in case of default in the payment of said rent, or any part thereof, for the space of twenty-eight days, it should be lawful for the said Stephen, his heirs or assigns, at their option, to sue for the recovery of the same, or to enter upon said premises and there to distrain for said rent; and it was further provided that said indenture, and everything therein contained, were upon the express condition that, if it should at any time happen that no sufficient distress could be found upon the premises to satisfy the rent due and in arrear, or if either of the covenants and conditions thereinbefore contained, on the part of said Jacob and Gysbert, their heirs or assigns, should not be performed, fulfilled or kept, or should be broken, then it should be lawful for the said Stephen, his heirs or assigns, or any of them, "into the whole of the thereby granted premises, or into any part thereof, in the name of the whole to reënter, and the same, as in his and their former estate, to have again, repossess and enjoy, and the said Jacob and Gysbert, their heirs and assigns, and all others, thereout and from thence utterly to expel, put out and amove, the said indenture, or anything therein contained to the contrary therof, in any wise notwith-

standing." The plaintiff also proved that, on the 18th of April, 1837, the said Stephen executed his last will and testament, by which he devised to the plaintiff the aforesaid rents and covenants, with said condition of reëntry, and all his interest in said premises remaining after the execution of said indenture; that on the 26th of January, 1839, said testator died, leaving said will unrevoked and in force, whereby the plaintiff became the owner of said rents, conditions and covenants; that the rent had not been paid according to the conditions of the indenture; that the plaintiff had served a notice more than fifteen days before the commencement of the suit of his intention to reënter upon the premises, pursuant to the act of 13th May, 1846, entitled, "An act to abolish distress for rent, and for other purposes;" that, at the time of the commencement of the action, the defendant was in possession of the premises, having entered under said indenture, and under the said Jacob and Gysbert, their heirs or assigns, and that he withheld the possession of the same from the plaintiff.

It was proved, on the part of the defendant, that on the 10th of August, 1843, the plaintiff and his wife, of the first part, executed and delivered to Cyrus Butler, of the second part, an indenture of that date, in and by which, after reciting that said William P. Van Rensselaer was indebted to said Butler in the sum of $70,000, secured to be paid by the bond of said Van Rensselaer of the same date, to wit, $10,000 on the 14th of August, 1847; $35,000 on the 14th of August, 1848; and the remaining $25,000 on the 14th of August, 1850, with interest; the said parties of the first part granted, bargained, sold, assigned and confirmed unto the party of the second part, his heirs and assigns, forever, "all and every the yearly rents issuing or payable out of, or for all and singular those several farms and parcels of land situate in the towns of Greenbush and Brunswick, in the county of Rensselaer, which were heretofore granted and conveyed in fee by Stephen Van Rensselaer, * * * and are now held by the tenants thereof under perpetual yearly rents reserved to the said grantor, with power to distrain and reënter, * * * and the reversion and reversions, remainder and remainders,

and yearly profits and produce of the said rents, hereditaments and premises hereinbefore granted, * * * and all the estate, right, title and interest, property, claim and demand whatsoever, both at law and in equity, of them, the said parties of the first part hereto, of, in, to or out of the same rents, hereditaments and premises, or any of them, * * * and also all powers and remedies whatsoever for the recovery of the said rents, * * * and also all deeds, evidences or writings touching or in any wise concerning the said premises or any part thereof; * * * to have and to hold to the said party of the second part, his heirs and assigns, forever ; provided, however, that if the said parties of the first part shall, well and truly pay the sum of money mentioned in the condition of said bond, then these presents and everything herein contained shall cease, determine and be void." But in case of default in such payment, the party of the second part was authorized to sell the premises thereinbefore granted and assigned, at public vendue, and out of the moneys arising from such sale, to retain his debt and costs of sale, rendering the overplus, if any, to said William P. Van Rensselaer: It was also proved that the principal sum of $15,000 was overdue, and unpaid on said bond and mortgage when this action was commenced ; and that the mortgagee has never taken possession of the mortgaged property or any part thereof, but has suffered the mortgagor, and those holding under him, to possess the same and to deal with the profits thereof as his and their own.

It was also proved that on the 5th of March, 1858, the plaintiff made a contract in writing with Walter S. Church, by which he agreed to sell, " and, upon payment being made as thereinafter mentioned, from time to time to grant, convey and assign to said Church the rents reserved upon certain indentures therein mentioned, the indenture in this case being included. The agreement fixed a rate at which said rents and leases should be valued, and it provided that, upon payment by Church of the sum of $30,000 toward the consideration money, at the time stipulated in the agreement, the plaintiff with his wife should grant and convey to Church " so many and such of said leases, indentures, rents and

· rents in arrear as should be so then paid for at the rate afore-
said, which leases should be selected and agreed on by the
.parties;" and on the payment of said $30,000, the plaintiff
was "to deliver over and permit said Church to retain, so
long as the payments provided for should be made as they
became due, all the books, papers and maps, and other
writings belonging to said William P. Van Rensselaer per-
taining to said estate," excepting the leases or indentures,
which were not to be delivered except as paid for as above
stated; * * * and on payment of said $30,000, said
Church was to have full authority to collect and receive all
said rents, and to continue to do so until Van Rensselaer
should revoke such authority, which he could do upon any
continued default.

It was also proved that Church paid the $30,000 on or
before the 5th of May, 1858, according to the terms of said
contract, and that the books and papers touching the demands
made in this action were, at the date last mentioned, deliv-
ered by Van Rensselaer to Church.

It was further proved by the defendant, that, on the 18th
of October, 1859, Van Rensselaer and Church made a second
contract, as a substitute for the first, in which Church agreed
to purchase said rents, and to pay therefor $57,303.67 in cer-
tain specified installments, which sum, it was recited, had
accrued on the former contract and remained unpaid, and
Church was to pay the same in addition to what he had paid
on the prior agreement.

By the terms of the second contract, Church was to be per-
mitted, so long as he should punctually make the payments,
to retain all the books, papers and maps, or other writings
belonging to Van Rensselaer pertaining to the estate, and for
the purpose of managing said estates and collecting said
rents, excepting the leases or indentures, which were not to be
delivered except as paid for. · The second contract also con-
tained a provision similar to that in the first, respecting the
authority of Church to collect and receive rents, and the power
of Van Rensselaer to revoke it. Each of said contracts pro-
vided that, if Church should fail to make any payment when

it became due, he should at once restore to Van Rensselaer all the books, papers, maps and writings which he had delivered to Church, except such leases as had been absolutely conveyed and assigned to him. The referee further found that Church did not, in fact, perform the condition of prepayment to the amount required by the agreement, and so the condition upon which he was to be invested with absolute title was never performed.

The defendant also proved that, on the 3d of May, 1861, the plaintiff entered into a contract in writing with James Kidd, by which he agreed to sell, and on payment being made as therein stipulated, to grant and convey to Kidd the rents reserved on certain indentures described in a schedule thereto annexed, and which Kidd agreed to purchase and pay therefor the sum of $41,983.64, at the time and in the manner therein stipulated.

It does not appear, from the case or the report of the referee, that Kidd paid anything upon said contract. The schedule referred to in said contract is not set out in the case, nor does it appear that it included the indenture in this suit.

At the close of the testimony the defendant moved for a nonsuit, on the following grounds:

1. The plaintiff had nothing more than a chose in action; and his mortgage to Butler, the amount secured being due, constituted Butler, or his personal representative, the real party in interest, and the only party who could sue. The plaintiff had no cause of action.

2. By his sales to Church and to Kidd, the plaintiff ceased to have the right to collect or receive the demands for which suit was brought, and, therefore, ceased to be the real party in interest, at the time of the commencement of this action.

3. The contract, upon which this action is brought, was an assignment, and not a lease, and the defendant was not liable thereon, because he was not a party to the contract. And the amount was not apportionable.

4. The plaintiff cannot recover, because he had no estate or interest in the premises, when the action was commenced.

5. The covenants and conditions, on the part of the party

of the second part to the contract sued upon, could not attach to the estate sold and transferred, at the time they were made, because of the statute then in force, which declared that every purchaser of an estate in fee should hold the lands sold to him by the same services and customs by which the person making the sale before held the same lands and tenements. The covenants and conditions were, therefore, void, because in conflict with the provisions of the statute, at least as against subsequent purchasers of the same lands.

The referee overruled the motion, and the counsel for the defendant excepted.

The referee found all the facts proved as above stated, and decided that the plaintiff was entitled to recover the possession of the premises, and to judgment therefor, to which decision the defendant's counsel excepted.

Judgment having been entered on the report of the referee, and affirmed on appeal to the General Term, the defendant appeals to this court.

*A. J. Colvin* and *A. Bingham*, for the appellant.

*S. Hand*, for the respondent.

Smith, J.  The counsel for the appellant are correct in their position, that the conveyance in fee, executed by Stephen Van Rensselaer to the Van Iverens, in 1789, operated as an assignment, and not as a lease, and left neither any reversion nor possibility of reverter in the grantor.  That point has been repeatedly adjudged by this court, in cases arising upon indentures similar, in all material respects, to the conveyance referred to. (2 Seld., 467; 19 N. Y., 68; 26 id., 558.)  The cases which thus hold, proceed upon the ground that, since the act of 1787, concerning tenures (whatever was the law before its passage), it has not been possible to create a feudal tenure in this State; and, consequently, none of the peculiar incidents of that tenure attach to an estate granted by one citizen to another since that act took effect.  Thus, for example, the notion no longer prevails that an ultimate estate remains in the grantor of a fee simple; or that he has a

possible reversion, by escheat or otherwise; or that the estate granted by him is subject to certain inseparable conditions, implied by law, in his favor, such as that the grantee shall not alien, or shall render service or rent, and, in case of default, shall forfeit the estate. These rules, and many others that might be referred to, which were of feudal extraction, or resulted from the obligations arising out of the feudal relation, are now abrogated.

But, in all the decisions of this court, bearing upon the subject, careful attention has been given to the important distinction between conditions, implied by the law of feudal tenures, and those which the parties to a grant expressly mention and create in the conveyance, for the purpose of avoiding or defeating the estate. Any condition of the latter kind is valid, if consistent with the general rules of law; and if the condition expressed in a grant be valid, a right of entry for its breach, reserved to the grantor and his heirs or assigns, by the express terms of the grant, is also valid. This is wholly independent of tenure.

Prior to the adoption of the Constitution of 1846, there was no rule of law in this State prohibiting the reservation of a perpetual yearly rent, in a grant of land in fee, as a condition of the estate. Accordingly, it has been adjudged, in some of the very cases relied upon by the appellant's counsel, that such a rent, thus reserved, together with a right of distress and reëntry in case of non-payment, although not a rent-service, for want of a reversion in the grantor, is a rent-charge in fee, and equivalent to such rent-charge granted by the owner of the lands in fee. (19 N. Y., 76, 100; 26 id., 564.)

The cases already cited also held that such rent, although not an estate in the land, is a hereditament, devisable and assignable like other incorporeal hereditaments; that the covenants, entered into by the grantees for the payment of rent, run with the land and bind the heirs and assigns of the covenantor; that the terms of the devise to the plaintiff in this suit are sufficient to vest in him the right to the rents in question; and, according to the case of *Van Rensselaer* v

*Slingerland* (26 N. Y., 580), the plaintiff, as the assignee of the rent and right of entry, may maintain ejectment.

These several positions were recently reaffirmed by this court, in the case of *Main* v. *Jones*, decided at the present term, and not reported. As it was strenuously contended at the bar, that this case presents questions that have not been determined by this court, I have thus referred to former adjudications to show precisely what they decide. It is seen that they dispose of every question in the case, of any importance, except those growing out of certain transactions which did not appear in the former cases, to wit, the plaintiff's mortgage to Butler, and his executory contracts of sale to Church.

The mortgage executed to Butler, in 1843, covered the rent-charge and the right of entry created by the conditions and covenants expressed in the indenture between Van Rensselaer and the Van Iverens. Those rights being incorporeal hereditaments, and not mere choses in action or personal property, the mortgage is to be treated as a mortgage of real estate, and not of chattels. That the parties so treated it is apparent from its form, and from the fact that the wife of the mortgagor joined in it, and acknowledged its execution in the mode requisite to pass her estate. It follows, therefore, by the operation of a familiar rule, applicable to all mortgages of real estate, that the mortgage from Van Rensselaer to Butler was only a security ; the mortgagee had but a chattel mortgage prior to foreclosure and sale, and the mortgagor continued to be the real owner, unless there is some special provision in the mortgage having a different and controlling effect.

The defendant's counsel argues, from the terms of the mortgage, that it was intended to vest in the mortgagee the immediate right to receive the rents accruing upon the indentures covered by the mortgage, and hence, the mortgagor has no right to maintain this action. This argument is based upon the fact that the mortgage transfers not only the rents, but also "all powers and remedies whatsoever for the recovery thereof," and "all deeds, evidences or writings touching or in any wise concerning the said premises." The remedies and writings referred to were mere incidents

to the rents, which were the principal things conveyed, and the parties intended not to separate them, but that they should pass together under the mortgage, and that the mortgagee should have the same interest in the incidents as in the principal, to wit, a mere security for the payment of his debt, the mortgagor continuing to be the real owner. The subsequent conduct of the parties accords with this view. The referee found that the mortgagee had never taken possession of the mortgaged property, or any part of it, but had suffered the mortgagor, and those holding under him, to possess the same, and to deal with the profits thereof as his and their own, without prejudice to the lien of the mortgage. The plaintiff's right to maintain this action, therefore, is unimpaired by the mortgage to Butler.

The contracts of sale to Church were executory. The sale was not to be complete, so as to pass the title to the rents, except as they were paid for by the vendee, and then such rents only were to be transferred as the parties should select. There is no evidence that the rents reserved by the deed to the Van Iverens were paid for, or that they were selected by the parties and transferred.

But it is insisted by the defendant's counsel, that, by the terms of the contracts, the plaintiff ceased to have the right to collect or receive the demands for which suit was brought, and, therefore, he was not the real party in interest at the time of the commencement of this action. That position is untenable. Church had a mere authority to collect rents *in the name of the plaintiff*, or of any other person who might succeed to the right and title of the plaintiff, by his death, by operation of law, or by transfer, subject to the rights of Church. Such authority was not in exclusion of the right of the plaintiff, the legal owner of the rents, to collect and receive them, nor could it possibly divest him of his right to recover possession of the lands on breach of the conditions in the deed.

There is no merit in the other questions discussed by the appellant's counsel. The judgment should be affirmed.

All the judges concurring, except PORTER, J., who took no part in the case.

Judgment affirmed.