Freedman, J.
(concurring). The principal question involved in this case is, whether the conveyance by John P. Wake to the defendant operated as an assignment of the original lease held by John P. Wake, or should be regarded as a sub-lease. This question has been the subject of much discussion in the books and in the courts, and has given rise to many conflicting opinions. The distinction between a lease and an assignment, as laid down by the elementary writers, is clear enough : a lease creates an estate, and an assignment transfers the estate from one person to another, after it has been created; a lease is a continuing contract, and its obligations secure the right of possession to the tenant until the contract itself. ceases to exist; but an assignment, when it has wrought the transfer, has fulfilled its office. But although this difference between the operation of the two instruments has never been questioned, a conflict of opinion has frequently taken place, as to whether a particular instrument amounted in law to a lease or an assignment.
In reviewing the English authorities upon the subject, Platt, in his treatise on Leases, pp. 9-23, comes to the conclusion that a reversion in the grantor is indispensable to a lease; that is, if the instrument convey all the estate of the grantor, it is an assignment; if it convey a less estate than the grantor had, and leave a part of the estate, however small, in the grantor, it is a lease.
The same rule has been generally adopted in this country. The distinction between an assignment and a lease is stated in Taylor’s Land! and Ten., sec. 426, as follows : “An assignment of a lease is the transfer of the tenant’s whole estate therein to some third person. It differs from a lease in this, that by the latter the lessor grants an interest less than his own, reserving to himself a reversion; but by an assignment he parts with the whole property.” He also says of a lease in sec. 16, “ It is essential to a lease, also, that some reversionary interest be left in the lessoi*, for if he part with "his whole interest in the premises, or make a lease for a period exceeding his term, it will, in either ease, amount to an assignment.”
*247 And it lias been said, that it makes no difference whether the transfer is effected in form by an assignment, or by a demise or lease from the assignor to the assignee.
And Bingham, in his valuable treatise on the Law of Beal Property, recently published, after discussing this question pretty thoroughly, and citing numerous authorities, insists that this is the doctrine of all the authorities which treat of the subject, and he claims that it has never been distinctly contended that, when the grantor conveyed all his estate in the premises, the instrument was a lease, and that the cases sometimes cited as evidence of a contrary doctrine, either disclose the fact that all the estate was not transferred, or that the instrument forming the subject of the controversy contained peculiar provisions, inducing a belief that the parties supposed they were making a lease, and that, therefore, forms have been mistaken for substance. A careful scrutiny of the facts of the principal cases usually relied upon as evidence of such contrary doctrine, will show that this is so.
In Piggott v. Mason (1 Paige, 412), the Chancellor held that the leases to Griffiths & Green, and to Spies, were sub-leases, because they did not convey to them all the interest of the lessors (Garniss & Pyke). The lessors retained an interest by the new rent reserved to themselves; they did not give to the sub-lessees an absolute right to take off the buildings which they should afterwards erect. If buildings had been previously erected, the absolute right to them at the expiration of the term belonged to the complainant, if the lessees did not think proper to take new sub-leases; and the right of the complainant to take the renewal of the original lease in his own name is evidently reserved in the sub-leases.
In Post v. Kearney (2 Comst., 294), Justice Gardiner, in delivering the opinion of the Court of Appeals, which is a very short one, and affirming the judgment of the Superior Court, says: “ The lease between the parties last mentioned is in the usual form, with covenants by the lessee for the payment of rent, and for the surrender of the premises at the close of the term in good order and condition. Shepherd, therefore, did not hold the *248 premises as assignee, but as the under-tenant of the defendant (Piggott v. Mason, 1 Paige, 414,415).” This remark, from which it does not appear whether Shepherd’s lessor did or did not part with his entire interest in the original lease, or whether he did or did not retain a reversionary interest therein, and which does not disclose to whom Shepherd was bound to surrender, has since been frequently cited in support of the theory, that every conveyance not containing the proper technical words of an assignment should be considered as a sub-lease, and not as an assignment, even if it convey the whole estate of the grantor in the unexpired term, and in many cases seems to have misled. The report of the same case in the court below (Kearney v. Post, 1 Sandf., 105), shows that the Superior Comt held the lease to be a sub-lease, and not an assignment, for the following reasons:
‘‘ It appeared that although the demise of the defendant to Shepherd was for the whole residue of the term, it reserved to the defendant a payment of an annual rent four times as great as that reserved in the lease; it contained a covenant on the part of Shepherd to surrender the possession of the demised premises to the defendant on the last day of the term; in case of the destruction of the buildings by fire, the whole demise to Shepherd was to terminate; and Shepherd, if he held to the end of the original term, was to have no interest in the payment for the buildings, or in the alternative renewal.” It was clearly, therefore, a sub-lease, and the Court of Appeals so held.
In Linden v. Hepburn and others (3 Sandford, 668), the Court, relying upon the case of Post v. Kearney (supra) and the case of Doe ex dem. Freeman v. Bateman (2 B. and Ald., 168), held, that a certain lease of part of the premises conveyed by an original lease should be regarded as a sub-lease, and not as an assignment of the original lease ¡pro ta/ntó, because the right to re-enter was reserved to the plaintiffs, and this suffices to enable them to enter for breach of the conditions, although there be no .reversion remaining in them; and the court, therefore, without noticing the entirely different state of facts in Kearney v. Post, affirmed the judgment upon the demurrer. The case of Post v. *249 Kearney I have already examined and distinguished, and in Freeman v. Bateman (supra) Chief-Justice Abbott simply held that Bateman, as lessee for years, having made a conveyance for a term co-extensive with his own, operating as an assignment of his whole interest in the land, but containing a covenant on the part of Freeman not to open a public house on the demised premises without license, and giving to Bateman the right of re-entry on breach of the §aid covenant, had a right upon an actual breach thereof to re-enter upon the land, although no reversion was left to him in case of the observance of the condition. The Chief-Justice in this case did not only not decide that the conveyance to Freeman was a lease, but distinctly held that it operated in law as an assignment, and that Bateman could maintain an action upon the covenant. In this case the right of Bateman to sue for a breach of the covenant referred to was perfect, •whether his conveyance in law amounted to a lease or an assignment.
So, in Linden v. Hepburn (supra) the right of the plaintiffs to sue upon the covenants, that the premises were to be occupied and used only as a dwelling and cabinet-maker’s shop and ware-rooms, except that the basements on Broadway might be let to trades not noisy, but not for billiards, tenpins, &c., &c.; that no persons, furniture, &g., should be placed or go on the roofs of the Broadway houses; that no projecting signs should be put up,nor any awning or posts, and that no alterations should be made in the buildings without the lessor’s written consent, and that if default be made in any of said covenants, the plaintiffs might re-enter, all of which covenants the defendants broke, did not depend upon the question whether the lease to West operated as an assignment of the original lease, pro tambo, or as a sub-lease, but was perfect in either case, in consequence of the express covenants so made by West himself in favor of the plaintiffs.
There is an important distinction between conditions implied by the law of feudal tenures and those which the parties to a grant expressly mention and create in the conveyance, for the purpose of avoiding or defeating the estate. Any condition of *250 the latter kind is valid, if consistent with the general rules of law; and if the condition expressed in a grant be valid, a right of entry for its breach, reserved to the grantor and his heirs or assigns, by the express terms of the grant, is also valid. This is wholly independent of tenure and also independent of priority of contact or estate (Van Rensselaer v. Dennison, 35 N. Y., 393).
In the case of Martin v. O’Conner (43 Barb., 514), there was an express covenant on the part of the sub-lessee with his lessors (the original lessees), to pay taxes and assessments, to pay the rent to his lessors, giving them the right of re-entry in case of nonpayment of the rent or of a breach of any of the covenants on his part, and the Court, relying wholly upon the remark of Justice Gardiner in Post v. Kearney, hereinbefore referred to, were of the opinion that it would be inconsistent with the decision in the last-named case to construe the conveyance into an assignment; but no reference whatever is made to the distinguishing features of the last-named case, as reported in 1 Sandf., 105.
In the People v. Robertson (39 Barb., 9), the court found there was a reversion in the lessor, that the first lease did hot expire until twelve o’clock of the first day of May, while the second expired at twelve o’clock at night of the thirtieth of April; and that there was, therefore, a period of time intermediate, when the sub-lessor had the right of entry and of possession of the premises. The facts in the case also show that the relators had paid rent under the' lease to the respondent, as their landlord, and had thereby recognized him as such, and thereafter were estopped from denying his title as such landlord, which carried with it the right to institute summary proceedings under the statute for the recovery of the possession of the premises in case of non-payment of rent.
In Davis v. Morris (36 N. Y., 575), the lessee, Hudson, retained the reversion of the last day of the term. The counsel for the defendant conceded that but for this reservation Morris would have become liable as assignee of the lessee for the rent to the plaintiff, and the Court held the defendant not hable, because by his agreement he did not become the owner of the entire term.
*251 The cases referred to, for the reasons stated, cannot be considered as varying the general rule that if an instrument convey all the estate of the grantor, it is in law an assignment, and if it convey a less estate than the grantor had, and leave a part of the estate, however small, in the grantor, it is a lease. This has been distinctly asserted in Bedford v. Terhune (30 N. Y., 453), and it has also been held in this case that in the absence of any evidence of the bargain under which a defendant entered into possession, it being shown that he occupied the whole of the unexpired term of the lease, the fair presumption is that he entered for the whole of such unexpired term; and as such interest is given not by an under-lease, but by an assignment, the presumption must be that the defendant is in as assignee, and not as under-tenant.
And in Smiley, v. Van Winkle (6 Cal., 605), the rule was laid down as follows : “ A conveyance by a lessee of the remainder of his unexpired term, though it employ words ordinarily used in a demise, and contain a reservation of rent and the right of re-entry on covenants broken, is not an under-letting or sub-lease, but is considered in law as an assignment of his whole interest, as there remains in kirn' no reversion of the estate, it being one of the essentials of a lease that it should contain a reversion in favor of the grantor.”
Therefore, the defendant in this action having acquired the whole estate of John P. Wake in the lease hereinbefore referred to, paying the same rent, there being no covenant to surrender to John P. Wake at the expiration of the term, and the latter having no reversionary interest whatever in the premises, the conveyance to the defendant amounts in law to an assignment of the original lease, and the defendant is bound by the covenant to pay to the plaintiff one half of the additional rent or yield of the premises over and above the sum of one thousand dollars. The payment of four thousand dollars made by Abbey, Sturdevant & Co. to the defendant on the 1st day of May, 1866, must be considered as such additional rent or yield of the premises. A gross sum paid *252 to the landlord for the use of the premises is rent, and calling it a bonus does not alter its character.
The defendant’s actions in this case show, in a very strong light, that his own construction of the law and the facts of this case was in entire accordance with the views herein expressed by me. After the execution of the lease to Abbey, Sturdevant & Co., by William Wake, on the 6th day of March, 1866, and a payment of four thousand dollars made by Abbey, Sturdevant & Co. thereon,-the right of the plaintiff to demand one half of said sum had become perfect, and the surrenders and transfers attempted to be made between the Wakes and Abbey, Sturdevant & Co. in the month of December following, could not divest the plaintiff of her rights previously acquired.
For the foregoing reasons I am of the opinion that the defendant’s exceptions should be overruled, and that judgment should be directed on the verdict in favor of the plaintiff for the sum of twenty-two hundred and twenty-one dollars and fifty cents, the amount claimed.