# Prout & Robertson v. Webb.

*Action by Warehouse-man against Banker, for Breach of Special Contract.*

1. *Statute of frauds; contract not to be performed within one year; promise to answer for debt or default of another.*—A promise made by a private banker, advancing money to cotton-buyers, to a warehouse-man, to pay the warehouse charges on the cotton of persons dealing with him, if the warehouse-man would allow it to be shipped without prepayment of his charges, is not a contract "not to be performed within one year" (Code, §1732), although the parties acted under it for more than a year before a breach occurred; nor is it a promise to answer for the debt, default, or miscarriage of another person, within the terms of the statute; but it is an original promise or undertaking, founded on a two-fold consideration—benefit to the promisor, and detriment to the promisee.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. WM. E. CLARKE.

This action was brought by John C. Webb, against Prout & Robertson as partners, and was commenced on the 13th February, 1888. The original complaint contained two counts, the first being for the breach of a special contract, to which a demurrer was sustained because its averments were not sufficiently certain and definite; and the second was the common count for money had and received. On sustaining the demurrer to the first count, the plaintiff had leave to amend; and he then filed two additional counts, as follows:

(3.) "Plaintiff claims of defendants the sum of $500, and avers that he is engaged in the business of a warehouse-man and forwarding merchant, and, in his regular course of business as such, had in his possession 777 bales of cotton, upon which was due him the sum of $492.15 for his charges thereon; that he had a lien on said cotton for his said charges, of which defendants had notice; that defendants, being fully aware that plaintiff had a lien upon all cotton coming into his possession in the regular course of his business as warehouse-man and forwarding merchant, did prom-

38

ise and agree with the plaintiff, that if he would allow cotton under his control to be shipped from his warehouse by cotton-buyers who were dealing with defendants, without embarrassing such shipments by detaining cotton until his charges thereon were paid, they, said defendants, would pay such charges on all such cottons passing through their hands; that said 777 bales of cotton were shipped from plaintiff's warehouse by Th. Bernard & Co., cotton-buyers who dealt with defendants, and passed through defendants' hands; that plaintiff, relying upon defendants' said promise, suffered said cotton to go out of his possession, and to be shipped by said Th. Bernard & Co., without first collecting his charges; that the whole amount of said charges is still due and unpaid; that he has demanded of defendants the sum due him for said charges, and they have failed and refused to pay the same, or any part thereof," &c.

(4.) "Plaintiff claims of defendants the sum of $500, and avers that he is engaged in business as a factor, warehouse-man, and forwarding merchant, and, in his regular course of business as such, had in his possession 777 bales of cotton, upon which there was due to him the sum of $492.15 for charges and advances thereon, and on which he had a lien for said charges and advances, of which lien defendants had notice; that said defendants, being fully aware of plaintiff's lien upon cotton coming into his possession in the regular course of his business as above stated, did promise and agree with plaintiff, that if he would allow cotton under his control in his regular course of business to be shipped by cotton-buyers who were dealing with defendants, without embarrassing such shipments by detaining cotton until his charges thereon were paid, they, the said defendants, would pay said charges on all such cotton passing through their hands; that said 777 bales of cotton were shipped by Th. Bernard & Co., cotton-buyers who dealt as such with defendants, and passed through defendants' hands; that plaintiff, relying upon defendants' said promise, suffered said cotton to go out of his possession, and to be shipped by said Th. Bernard & Co., without first collecting his charges; that the whole amount of said charges is still due and unpaid; that he has demanded of defendants the sum due him for said charges, and they have failed and refused to pay the same," &c.

The defendants demurred to the complaint as amended, on the ground that there was a misjoinder of counts; and to

[Prout & Robertson v. Webb.]

the "1st, 3d and 4th counts severally, because it shows that plaintiff voluntarily abandoned the lien for whose destruction he sues, and voluntarily surrendered the possession of the cotton." The court overruled the demurrer, and the defendants then pleaded the general issue and the statute of frauds; on which pleas issue was joined.

On the trial, as the bill of exceptions shows, the plaintiff testified in his own behalf, that he had been carrying on the business of a warehouse-man, factor, forwarding and commission merchant in Demopolis, for twelve or fifteen years, while the defendants were carrying on business as bankers; "that defendants, in the course of their business, made advances to cotton-buyers, to enable them to buy cotton in that city; that when cotton was delivered to him, he gave the owner a receipt for the same, on which were shown all of his charges up to its date; that the receipt represented the stored cotton, and a purchaser of the cotton paid the value thereof less the charges shown by the receipt, and held the receipt as evidence of his title to the cotton, the ownership of the cotton always following the receipt; that the defendants, advancing money to cotton-buyers, took such receipts, and held the same as security for such advances; that up to November, 1885, or 1886, he had permitted buyers, who owned cotton in his warehouse, to ship the same before his charges were paid, relying on the shippers to pay the same, but about that time he became dissatisfied with this mode of business, and determined to quit it except as to one particular buyer; that he then informed defendants he would never ship any more cotton until his charges were paid, and they thereupon promised and agreed to guarantee his charges on all cottons, for which his receipts came into their hands, provided he would agree not to impede the shipment of such cottons by holding the same for the payment of his charges thereon, and he consented thereto." He testified, also, that the cotton season each year commenced on the 1st September, and ended on the 31st August following, though the buying of cotton generally ended early in May; that Th. Bernard & Co. followed the business of buying cotton in Demopolis during the season of 1887-8, their business being managed exclusively by said Th. Bernard; that the defendants introduced said Bernard to him in the early part of the season, saying that he would probably buy most of the cotton sold there that season; that said Bernard & Co. did buy a great deal of cotton during that season, and stored it in his warehouse,

taking his receipts for the same, and depositing them with defendants as security for the money advanced to buy it; that they paid all of his charges on such cotton prior to December 19th, 1887, invariably making payments by checks on defendants, which showed on their face that they were given for charges on cotton, and all of which were promptly honored by defendants up to that time; that between December 19th, 1887, and 7th January following, there accrued to him charges amounting to $492.15 on 777 bales of cotton stored with him by Bernard & Co., the account of which charges was kept on his books against said Bernard & Co., and against no other person; that Th. Bernard left the city early in January, 1888, leaving a clerk in charge of his office and business; that said account was made out and presented to said clerk, who said that he could do nothing in Bernard's absence; that payment was afterwards demanded of the defendants, who requested plaintiff to wait until Bernard returned, saying that they could do nothing in the matter without a check from him; that he repeatedly asked payment of them, which they refused on the same ground; that on Bernard's return, he gave plaintiff a check on defendants for the amount of the charges, but told him they would not pay it, as he had no money to his credit with them; that Bernard went with him to defendants' office when he presented said check for payment, which was refused; that said account for charges had never been paid, and he had no means of indemnity in his hands.

The defendants testified, as to the nature of their business and that of the plaintiff, in substance as the plaintiff, but said that they had never been engaged in the business of buying or selling cotton in Demopolis; that they advanced money to cotton-buyers on satisfactory security, their profits accruing on account of interest and exchange; that they did, on two separate occasions, guarantee plaintiff's storage account against two individual cotton-buyers, but this was done by special agreement,—one five or six years ago, the other in the Fall of 1885, or 1886; that they never made any agreement in November, 1885, or at any other time, to be responsible for plaintiff's charges on cotton; that at the beginning of the cotton season of 1887–8 they declined to advance money to any cotton-buyer, unless they were secured against loss; that Th. Bernard came to Demopolis about that time, representing Bernard & Co., secured them against loss, and made arrangements to get money with which to engage

[Prout & Robertson v. Webb.]

in the cotton business; that they agreed to pay the checks of said Bernard & Co. when they came with the cotton receipts attached, and to advance to them such an amount of money as they thought they could safely advance on the security held; that they paid out a large amount of money on the checks of said Bernard & Co. during that season, but nothing at all on their account without checks; that Bernard & Co. bought said 777 bales of cotton as plaintiff had testified, taking plaintiff's warehouse receipts, checking on them to pay for the same, and depositing said receipts with them as security for the money advanced, which defendants paid out on their check; that when Bernard & Co. got ready to ship the cotton, defendants delivered the cotton receipts to them, taking their receipts for the same, and had nothing more to do with the cotton, or the receipts, until Bernard & Co. brought them a bill of lading for the cotton, with attached draft for the proceeds of sale when sold, and they thereupon placed said drafts, less exchange, to the credit of Bernard & Co. on their books, where they had been charged with the money advanced; that they then had no knowledge or information as to whether plaintiff had any charges, paid or unpaid, on the cotton, and did not know that his charges were unpaid until he informed them of the fact several days afterwards; that he did not then demand payment of them, nor claim that they were bound for his charges, but abused Bernard for not paying them, and said that the loss was owing to his own negligence; that plaintiff again came into their bank, on January 24th, 1888, in company with Bernard, and presented his check, which they refused to pay because they had in their hands no funds belonging to said Bernard, who was still indebted to them on account.

The bill of exceptions purports to set out "all the evidence in the case," the above being a summary of it. Thereupon, the court charged the jury, "that if they believed from the evidence that the defendants made the promise set out in the complaint, and testified to by plaintiff, the statute of frauds would not avail them as a defense." The defendants excepted to this charge as given, and also to the refusal of each of the following charges, which were asked by them in writing: (1.) "The jury can hold the defendants to no promise to answer for the debt, default, or miscarriage of Bernard & Co., unless the same was in writing." 2. "The plaintiff can not recover in this action upon any agreement that is not to be performed within one year from the making

[Prout & Robertson v. Webb.]

thereof, unless they believe from the evidence that the same was in writing." The court charged the jury, also, on request, that the plaintiff was not entitled to recover on the count for money had and received; and to this charge the plaintiff excepted.

The appeal is sued out by the defendants, who assign as error the rulings on the pleadings adverse to them, the charge given, and the refusal of the charges asked by them; and there is, by consent, a cross-assignment of error by the plaintiff, which requires no notice.

TAYLOE & JOHNSTON, and GEO. G. LYON, for appellants. (1.) The contract sued on was without consideration. Plaintiff's promise, as alleged and proved, was, "not to impede the shipments of cotton by holding the same for the payment of his charges." It was his legal duty not to impede the shipments, and he would have been liable to an action for damages if he had done so. (2.) The contract was void under the statute of frauds, because it was not to be performed within one year from the making thereof. It must be remembered that the contract was made late in the season, when the business of buying cotton was nearly over, as the court judicially knows; and the fact that the parties continued to act under it during the next season shows their intention as to its scope and extent—is a practical illustration of their understanding and intention; in fact, the alleged breach did not occur until the close of the next season.—12 Heisk. 655; *Doyle v. Dixon*, 93 Amer. Dec. 87; Smith on Contracts, 57–8. (3.) The contract was void under the statute of frauds, for the further reason, that it was a promise to answer for the debt, default, or miscarriage of other persons. The entire evidence shows that plaintiff regarded Bernard & Co. as his debtors, and made no claim of liability against defendants until after he had failed to make the money out of Bernard & Co. If any liability was incurred by Bernard & Co., or any credit was extended to them, defendant's promise was collateral, and within the terms of the statute.—Smith's Mer. Law, ch. 11; *Curtis v. Dennis*, 7 Metc. 510; 4 W. Va. 29; Brandt on Suretyship, § 56; 2 East, 325; Browne on Stat. Frauds, 228-30; *Clapp v. Webb*, 52 Wisc. 638; 55 Wisc. 645; 2 Story on Contracts, § 864; *Boykin v. Dohlande & Co.*, 37 Ala. 577; 22 Me. 395; 36 Me. 113; *Taylor v. Drake*, 53 Amer. Dec. 680; *Peabody v. Harvey*, 10 Amer. Dec. 103; *Puckett v. Bates*, 4 Ala. 390. (4.) The

[Prout & Robertson v. Webb.]

intention of the parties, under the facts in evidence, was a question for the jury, and it should have been submitted to them.—Brandt on Suretyship, § 63; 100 Amer. Dec. 66; 37 Ala. 583; 1 H. Bla. 10; 2 T. R. 80; *Scott v. Myatts & Moore*, 24 Ala. 489; Browne, Stat. Frauds, 226.

GEO. W. TAYLOR, *contra.*—(1.) The contract was supported by a two-fold consideration—benefit to one party, and detriment to another.—66 Ala. 490; 75 Ala. 452; 77 Ala. 217. (2.) The contract might have been fully performed within one year, and there was no provision for its longer continuance; nor can any presumption of further continuance be indulged in to defeat it.—*Brigham & Co. v. Carlisle*, 78 Ala. 243; *Derrick v. Brown*, 66 Ala. 165; *Heflin v. Milton*, 69 Ala. 356. (3.) The contract was executed, and nothing remained to be done but the payment of the money. *Westmoreland v. Porter*, 75 Ala. 452; Bishop, Contracts, §§ 672. (4.) The promise was an original and primary undertaking, supported by a sufficient consideration, and not collateral to the debt or liability of any other person.—*Bell v. Marx*, 48 Ala. 498; *Clark v. Jones*, 85 Ala. 127.

McCLELLAN, J.—The plaintiff below was a warehouseman and cotton-factor in the city of Demopolis. The defendants were private bankers in said city. The contract declared on was entered into, if at all, by and between them in these respective capacities, and in its very nature depended for its continued existence upon the continuation, on either hand, of the business engaged in at the time by Webb and Prout & Robertson, respectively. Either party might have continued to engage in the business, with respect to which the contract was made, for any number of years; and on the other hand, either party might have desisted from the business within a year from the date of the contract. A discontinuance by either party, within the year, would have determined the contract. The undertaking, therefore, belongs to that class of "agreements to continue to do something for an indefinite period, which may be determined by such a change in the circumstances of the parties as will make it unreasonable or unnecessary that they should be further bound, the contingency of such change in circumstances being implied in the nature of the contract," and which "are not within that provision of the statute of frauds which requires all contracts, which by their terms are not to be performed

within one year, to be in writing."—Browne on Stat. of Frauds, 276a; 1 Reed, Stat. of Frauds, 199; Wood, Stat. of Frauds, 485; *Talmadge v. R. & S. R. R. Co.*, 13 Barb. 493; *Adams v. Adams*, 26 Ala. 279; *Brigham & Co. v. Carlisle*, 78 Ala. 244; *Heflin v. Milton*, 69 Ala. 356; *Derrick v. Brown*, 66 Ala. 165. And it is immaterial in such cases, so far as the application of the statute of frauds is concerned, whether the contract has or has not been performed within the year. Browne on Stat. of Frauds, 279.

This contract was made in November, 1885, or 1886. It was not restricted in its application to cotton bought by any particular buyer or buyers, but was intended to embrace all cotton stored in appellee's warehouse, which should be bought by persons dealing with and through the appellants as to the particular purchase. Bernard & Co. did not begin operations as cotton-buyers at Demopolis, until the fall of 1887. It would, therefore, be a presumption too violent to be indulged, that the agreement of Prout & Robertson was made in the interest of, or for the benefit of Bernard & Co., or other cotton-buyer. On the contrary, the agreement was to obtain with respect to all buyers who dealt with Prout & Robertson, and whose purchases passed through their hands. From these dealings certain profits resulted to the appellants, consisting of the interest on money which they advanced, and of the exchange which they charged on the collection of drafts for the proceeds of the cotton when sold. To facilitate Prout & Robertson in the dealings in which they were thus interested, and out of which these profits were made, Webb surrendered his lien on the cotton, in consideration of their promise to secure him in the payment of his charges. The "leading purpose" of Prout & Robertson, therefore, was not to answer for the debt, default, or miscarriage of Bernard & Co., but to subserve their own pecuniary or business interests. The contract by which this object was accomplished, was supported by considerations moving directly between the parties to it, and with which Bernard & Co. had no concern, which were of benefit to the promisor, as well as of detriment to the promisee; and although it may be in form an undertaking to answer for the debt of another, and although, as a matter of fact, when performed, it may have that effect, it is not within the third clause of the statute of frauds, and need not have been in writing.—*Wilson v. Boynton*, 3 Met. (Mass.) 396; *Emerson v. Slater*, 22 How. 28; *Castling v. Aubert*, 2 East, 325; *Small v. Shœfer*, 24 Md. 161; *Leiber*

*v. Levy*, 3 Met. (Ky.) 292; *Westmoreland v. Porter*, 75 Ala. 459; Browne Stat. Frauds, 214*b*-249, and note; 1 Reed Stat. Frauds, 72.

The same conclusion would probably be reached upon other considerations presented by the evidence in this case; as, for instance, that appellants, through this arrangement, obtained possession and control of the property, through the bills of lading, which, in the course of these dealings, were deposited with them.—Authorities above cited; and *Williams v. Leper*, 3 Burr. 188; *McCrary v. Madden*, 1 McCord L. 486. But we are content to rest it on the position first taken.

The demurrers to the first count of the complaint were sustained, and leave granted plaintiff to amend. This was done by adding the third and fourth counts. Whereupon the defendants again demurred to the *first*, which was no longer in the complaint, and also to the third and fourth; and they now assign the overruling of their demurrer to that count as error. This is so palpably a mistake, that it need not be further considered.

The third and fourth counts are for the breach of the special contract, and seek to recover the amount of money which the defendants, it is alleged, agreed in that contract to pay to the plaintiff. They do not proceed on the theory, that a breach of duty imposed by the contract has been committed, whereby and in consequence of which plaintiff has been damaged in the sum claimed, but they seek to hold the defendants to the payment of the money that they obligated themselves to pay. The case made by these counts is, therefore, *ex contractu*, as upon an express agreement. The case made by the second count, for money had and received, is also *ex contractu*, as upon an implied promise; and these several counts are, therefore, properly joined.—*Whilden v. M. & P. Bank*, 64 Ala. 27.

The amended complaint on the special contract, and each count thereof, avers that the plaintiff was induced to forego his lien on the property, and to surrender his possession of it, by the agreement of the defendants to see that his charges were paid; and the demurrer to the third and fourth counts, on the assumption that they show a voluntary surrender of the property, or abandonment of the lien, under which plaintiff had possession of it, are not well taken. The rulings of the court below, so far as they were prejudicial to the defendants, were in accordance with the principles we have an-

nounced, and were free from error. Its rulings which went to the prejudice of the plaintiff, and are, by agreement of parties, brought to our attention by a cross-assignment of error, need not be considered; since, in the view we have taken of this case, they involve no injury to the appellee.

Affirmed.