PARISH v. ROGERS.

(Supreme Court, Appellate Division, Fourth Department. July 29, 1897.)

1. RESTRICTIONS ON ALIENATION—CONSTRUCTION.
    A prohibition upon the free alienation of property must be strictly construed.
2. LEASES OF FARM LANDS—TERM.
    A lease of a farm during the lifetime of the lessor and of his wife, for rent payable to the lessor during his lifetime, and after his death to his widow, is not void ab initio, but can be valid for 12 years only, under Const. 1895, art. 1, § 13, providing that "no lease or grant of agricultural land, for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid."
    Follett and Adams, JJ., dissenting.

Appeal from special term, Genesee county.
Ejectment by George E. Parish against Arthur P. Rogers. From a judgment in favor of defendant (40 N. Y. Supp. 1014), plaintiff appeals. Affirmed.

The facts, briefly stated, are these: On the 25th day of February, 1888, one Elisha H. Parish executed and delivered to the defendant a lease or grant of certain agricultural lands, which by its terms runs during the natural life of the lessor or grantor and of his wife, reserving an annual rent of $300, payable quarterly during his lifetime, and at his death to his widow during her natural life. The grantor died in 1889, leaving a last will and testament, by which he devised said lands to the plaintiff. The wife of the grantor was still living at the time of the trial of this action. In April, 1896, the plaintiff com-

menced an action for the recovery of the possession of said lands, based upon the ground that said lease or grant was made in contravention of the provisions of section 13, art. 1, of the constitution, and was, therefore, null and void: "No lease or grant of agricultural land, for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Bowan & Washburn, for appellant.

M. H. Peck, Jr., for respondent.

GREEN, J.   The precise question for determination, broadly stated, is whether the creation of estates for life in agricultural lands, with a reservation of rent, are prohibited by the constitution.   In other words, whether the instrument of grant or lease creating such an estate is void ab initio.   In ascertaining the true interpretation of this constitutional provision and in determining the extent or limits of its operation, we may be assisted in arriving at a just conclusion by a statement of certain general principles.   In Settle v. Van Evrea, 49 N. Y. 280, the court held that the restriction against certain judicial officers acting as referees did not apply to "commissioners of appeals," because the clause in the constitution there under consideration did not, by its terms, literally include those officers, though the same reasons must have existed for including the commissioners in the prohibition which were applicable to the court of appeals proper.   Allen, J., stated the true principle of interpretation to be observed in these words:

"If to meet exigencies and to prevent mischiefs it is allowable, sometimes, to depart from the strict letter of a law, and imply an intent not clearly expressed in the construction of ordinary statutes, which may be framed in haste, and with none of the formalities that attend the preparation and adoption of a state constitution. it would be dangerous in the extreme to extend the operation and effect of a written constitution by construction beyond the fair scope of its terms, merely because a restricted and more literal interpretation might be inconvenient or impolitic, or because a case may be supposed to be, to some extent, within the reasons which led to the introduction of some particular provision plain and precise in its terms.   That would be pro tanto to establish a new constitution, and do for the people what they have not done for themselves.   The terms of the instrument being clear and free from doubt, and having a well-understood meaning and application, the better way is to stand upon the maxim 'Ita lex scripta est,' and leave any supposed defect or omission to be remedied by the people or by legislation. * * * The prohibition is simple and direct, contained in a single paragraph, the terms of which are apposite, conveying a distinct and definite idea, and, if they are extended, it can only be done by conjecture as to the possible intent of the framers of the clause, and upon a theory as to some policy supposed to be shadowed forth.   The effect of the prohibition cannot be enlarged by conjecture or implication."

See, also, People v. Dayton, 55 N. Y. 367, 375; Countryman v. Norton, 21 Hun, 17, 19.

If a lease or grant of an estate for life is to be judicially declared to be one "for a longer period than twelve years," and therefore obnoxious to the constitutional limitation, such adjudication must be founded, not upon the particular words or terms in which the pro-

hibition is expressed, but rather upon some supposed principle of public policy. Or, in other words, that such a grant comes within the spirit of the provision, though not within the letter. But the application of such a principle of interpretation to a constitutional or statutory provision of this character, restricting, as it does, the right of free alienation of property, is not proper. The right of alienation being a fundamental right, it is subject only to such restrictions and limitations in its exercise as the constitution may prescribe, either in express terms or by clear and necessary implication; or to such restrictions as the legislature, acting within its constitutional powers, may deem proper to impose for the public good. A particular prohibition upon the free alienation of property cannot be extended or enlarged beyond the terms in which the restriction is expressed by the application of any rule of liberal interpretation. On the contrary, the provision must be made to bear a restrictive interpretation, and be limited in its operation and effect by the language employed. If we hold that an estate for life is per se an estate exceeding 12 years in duration, and therefore void, it follows that such estates in agricultural lands, with a reservation of rent, are entirely abrogated, and the owner of property is prohibited from creating such an estate, either for his own life or that of another. The only way to avoid the constitutional restriction would be to declare that the estate should cease at the expiration of 12 years if the grantor or grantee (as the case may be) should then be living. The same result may well be accomplished by giving effect to the constitutional provision that the grant or lease shall no longer be valid after 12 years, and by judicially declaring that thereupon the grant shall be void, and the rent reserved shall cease; that upon the expiration of that period the reciprocal obligations of the parties are annulled by operation of law; the grantor is entitled to his land, and the grantee is free from the payment of rent. It will be observed that there is no declaration of intent to abrogate grants of life estates in agricultural lands in which rent or service of any kind shall be reserved. And, since the creation of such estates is not prohibited, either in express terms or by necessary implication, it ill becomes the judiciary to declare such prohibition upon a mere presumption of intention nowhere indicated in the constitution. The purpose of the enactment was not to interdict the creation of such estates, but to limit the period of time beyond which they shall not extend. Where the term is specified in the lease, and exceeds the limitation, it is void per se; but where it is left indefinite, and its termination depends upon the contingency of death, which may happen within the period of limitation, it cannot be said to be void ipso facto, as being made for a period longer than 12 years. Non constat but that the estate will terminate within the period. It does not appear, therefore, from the terms of the grant, that it will last longer than 12 years. In respect to whether the grant is void upon its face, the words "longer period" should be construed as meaning a definite period, and as not applicable to estates whose duration is wholly indefinite and uncertain. This grant is not, by its terms, a lease "for a longer period than twelve years," but for an indefinite time, which can only be made definite or

fixed by the happening of a contingency, viz. death, which may occur within the limitation. The instrument cannot, therefore, be said to create a term for a longer period than 12 years, within the meaning of the provision. The word "period" may mean an indefinite time as well as a time specified, but it cannot have that meaning here, for the word relates to a specified period, and this grant is for an indefinite time, which may expire within the period beyond which it cannot continue in legal operation or effect. The purpose intended to be accomplished, or the mischief designed to be remedied or obviated by this enactment, viz. to prohibit the reservation of rent or service upon leases for long periods of years, may be sufficiently effectuated by upholding the validity of the life estate created until the time limited arrives, when the obligation to pay rent shall cease.

The learned judge (Spring, J.) who delivered the opinion in the court below well says that the instrument itself does not in express terms come within the prohibition of the constitution. The term may extend beyond the restricted period, or it may expire before that time. The provision curtails the rights of owners of estates. It places a restriction upon the disposition of their property. And in order to make this curtailment—this restriction—effective, the instrument itself should clearly come within the pale of the inhibition. That the court cannot hold as matter of law that this instrument will extend for a longer period than 12 years. Its termination depends upon providential interposition, and not upon the volition of the parties, so there was no attempt to violate the constitutional interdict, as in some of the cases. Now, since the creation of life estates is not prohibited, the only effect the constitutional provision can have upon them is to limit their duration to a period beyond which they shall not extend. The decisions under the clause of the statute of frauds declaring void every parol agreement that by its terms is not to be performed within one year have some application to this case by way of analogy. Where the time of performance was made to depend upon the contingency of death, and though that did not in fact occur within 20 years, it was held not within the condemnation of the statute. Kent v. Kent, 62 N. Y. 560. And a verbal contract to build and maintain a switch for plaintiff's benefit, for shipping purposes, "so long as he may need it," is not within the statute; nor is it a grant of "an estate for a term of more than one year in lands and tenements," or a "contract for the sale or lease thereof for a longer term than one year," within the Texas statute of frauds. Warner v. Railway Co., 164 U. S. 418, 17 Sup. Ct. 147. In the case cited, Gray, J., writes an elaborate opinion, reviewing many of the authorities. The principle upon which all these adjudications rest might well be invoked in support of the proposition that life estates do not come within the condemnation of a provision limiting the duration of estates for years; in other words, that the specification of a time certain does not prohibit in any manner the creation of estates for a time uncertain, and that such estates are valid, and continue in operation, until the happening of the contingency upon which they are made to depend, even though they should extend beyond the period limited. It is sufficient for the purposes of a decision, however,

to hold that the provision is but a limitation upon the duration of the life estate, and not one that annuls the instrument of grant or lease by which it is created.

Reference may properly be made to the proceedings and debates in the constitutional convention of 1846. Mr. Brundage, one of the delegates, moved to insert after "years" the words "or natural life of the grantee," and made this observation: "The right to dispose of one's property during one's own life was a right which was inalienable, and which he would not divest himself or others." The proposed amendment was negatived by a decisive vote,—76 to 4. It is difficult to comprehend what was the particular purpose of the amendment, or what were the reasons that actuated the delegates in refusing to adopt it. The effect of it would be to extend the duration of the estate beyond 12 years, if the lessee or grantee should so long survive. Was that the reason why the amendment was rejected, with the intention that the provision should stand as a limitation of all life estates, whether for that of the grantor or the grantee? Or was it rejected because its effect would be to prevent an owner of agricultural lands from creating an estate for his own life, and that the convention did not propose to do? Or, in other words, that the creation and duration of life estates should not be affected? That the convention should remain silent upon that subject? That legislation respecting chattels real must necessarily be construed to be applicable to freehold estates, either as prohibiting their creation, or as a limitation upon their duration?

This, I believe, is the first instance in the history of the law of an attempt by legislative act to limit the duration of an estate of freehold by a term of years. It is inconceivable that the convention should have intended to abrogate or limit freehold estates without making any mention of them in a provision impairing the free disposition of property. It should be observed here that Mr. Brundage's remark is charged with ambiguity. He says he would not restrict the right of one to dispose of his property during his own life, and yet that was what he proposed to do by the amendment offered, for the effect of it would be to prevent the creation of an estate that would continue for the life of the creator. It is evident, however, that he did not understand that the original provision affected life estates in any manner. In Stephens v. Reynolds, 6 N. Y. 454, it was held that a lease for life conditioned that the lessee should occupy the land and support the lessor for life was not within the constitutional inhibition. In Parsell v. Stryker, 41 N. Y. 480, there was a lease for life, with an agreement to work the premises on shares, and the court held that, as no rent, as such, was reserved, the lease was valid. It is true that the court was not called upon in those cases to decide that a life estate, with a reservation of rent or service, came within the condemnation of the constitution, as well as an estate for years,—since it was determined that there was no reservation of rent or service,—yet the opinions of the judges indicate that it was their understanding that the constitution was intended to apply to estates for life; and the opinions of those eminent judges are entitled to much consideration, and especially so as to Ruggles, C.

J., who was a member of the convention, and concurred in the opinions in 6 N. Y. 454. In deference to these opinions we are constrained to hold that estates for life are affected by the constitution. Still it by no means follows that life estates in such lands were intended to be abrogated, and, since there is no declaration to that effect, the constitution may properly and rightly be construed to operate simply as a limitation upon the period of their continuance. It is neither declared that leases for life shall be void, or shall not be valid, or that they shall not be created in respect of agricultural lands. Nor is it declared that all leases shall be for a term of years, and not otherwise created. And, in analogy to the rule respecting legislative acts, we are not at liberty to declare the grant void, because, in our opinion, it is opposed to a spirit supposed to pervade the constitution, but not expressed in words. Cooley, Const. Lim. 204. It is unnecessary to allude to the provisions of the Revised Statutes respecting suspension of power of alienation beyond two lives in being, or as to remainders on successive estates for life beyond two lives. I do not perceive that these provisions have application to reversions. The latter provision only speaks of remainders limited on successive life estates, and I do not find a provision restricting the power to make a lease depending, say, upon the life of the lessor, his children, issue, or descendants. In the latter instance, is the absolute power of alienation suspended, even if it is expressly made to last as long as the life of the survivor of half a dozen lives? since the fee may always be conveyed subject to the life estate. See Chapl. Suspen. § 129, notes 1–3; Purdy v. Hayt, 92 N. Y. 451. We conclude, therefore, that the public policy declared by the constitution will not be violated by giving effect and operation to the life estate created until the expiration of the period limited by the constitution. The judgment therefore should be affirmed, with costs.

Judgment affirmed, with costs.

WARD, J., concurs. FOLLETT, J., dissents with opinion, in which ADAMS, J., concurs.

HARDIN, P. J. (concurring). On the 25th day of February, 1888, Elisha Parish was the owner of the premises described in the complaint. On that day he executed a lease to Rogers, the defendant, which was "for and during the term of the natural life of the party of the first part and his wife, Cynthia Parish, from the 1st day of April, 1888, which term will end when the natural life of Elisha H. and Cynthia Parish terminates and ends." The inhibition of article 1, § 13, of the constitution is against the execution of a lease or grant of agricultural lands "for a longer period than twelve years." The period mentioned in the lease may not be 12 months. From the terms of the instrument itself it cannot be demonstrated that it will carry to the lessee the right to occupy "for a period longer than twelve years." However, if it be said that the lease was against the literal language of the constitutional provision, then it was void in its inception. That being so, the lessor and testator was the owner of the land at the time of the execution of his will and at the time of

his death, which occurred on the 14th day of March, 1889. His will was dated on the 25th day of July, 1888. In the will of the testator, in which he gives to his son George, the plaintiff here, the land described in the complaint, the testator asserts his ownership of the lands, and that they are occupied and carried on by Rogers, and that the rent is to be paid to Cynthia Parish, the wife of the testator, after his death. And he supplements that declaration by saying in his will, viz. "and as she is to have the said rent as therein specified." It is manifest that it was the intention of the testator that his wife, Cynthia, should enjoy the use of the premises during her natural life. It may be such enjoyment and occupation will fall short of. 12 years. In Hart v. Hart, 22 Barb. 606, it was held that a lease of agricultural lands for 12 years, "with a covenant of renewal for 12 years longer, if the lessor shall live," was good for the first 12 years. In the course of the opinion delivered in Clark v. Barnes, 76 N. Y. 304, it was said, in speaking of the constitutional provision, viz.: "This provision condemns all leases for a longer period than twelve years. A lease for a longer period than that would not be valid for twelve years, but the lease itself would be void in toto." In that case a stipulation had been entered into to execute two leases of the same farm, one for 8 years, and another for 12 years from the termination of the first, and the two leases were construed together; and therefore it was declared that they were both void, inasmuch as they, in terms, provided for a period beyond that mentioned in the constitutional restriction.. To allow the plaintiff to recover possession of the lands would defeat the intention of the testator. Under the circumstances of this case, I am inclined to vote for an affirmance.

FOLLETT, J. (dissenting). This action—ejectment—was begun April 13, 1896, to recover a farm in the possession of the defendant. There is no dispute about the facts. February 25, 1888, Elisha H. Parish was the owner in fee of a farm containing about 114 acres, situate in the town of Bergen, and on the date mentioned he, as party of the first part, and Arthur P. Rogers, the defendant, as party of the second part, executed a lease, under seal, by which Parish leased to Rogers said farm "for and during the term of the natural life of the party of the first part and of his wife, Cynthia Parish, from the first day of April, 1888, which term will end when the natural life of Elisha H. and Cynthia Parish terminates and ends. And the said party of the second part covenants that he will pay to the party of the first part for the use of said premises the yearly rent of three hundred dollars, to be paid quarterly every three months during said term; said rent to be paid to Elisha H. Parish during his lifetime, and after his death to the said Cynthia Parish, his widow, if she be still living, during her natural life." Under this lease the defendant took possession of the premises, and now occupies them. March 14, 1889, Elisha H. Parish died, leaving a last will and testament, executed July 25, 1888, duly probated March 18, 1889, by which he devised this farm to his son, the plaintiff, in fee. It is conceded that the premises leased are agricultural lands, and that Cynthia Parish is living. The first and principal question involved on this appeal

is whether the lease is void under section 13 of article 1 of the constitution of this state, which provides:

"Sec. 13. No lease or grant of agricultural land, for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid."

It was held by the court below, and it is urged on this appeal, that as the lease was for two lives in being at the date of its execution, and not in terms for more than 12 years, it is not violative of the constitution, because it may terminate within 12 years from the date of its execution by the death of both persons upon whose lives the term is limited. This position is subversive of the spirit and purpose of the section of the constitution above quoted. Before the adoption of the constitution of 1846, it was the custom of the owners of large landed estates to grant perpetual leases, called "leases in fee," reserving rent, which endured so long as the rent was paid, and also leases reserving rent during the lives of two or more persons mentioned in the leases. The trouble between landlords and tenants under such leases in many counties of the state, immediately preceding the constitutional convention of 1846. culminating in what is known in history of the state as the "anti-rent war," was one of the principal reasons for calling that convention. That it was the purpose of the convention to prohibit the granting thereafter of leases of agricultural lands, reserving rent, either in perpetuity or for lives, is, as I think, conclusively shown by the proceedings of that body. Among other committees appointed by the convention was No. 18, "On the creation and division of estates in lands," of which Judge Samuel Nelson was chairman, but, owing to his absence during a large part of the session of the convention, Judge Ira Harris became the acting chairman. This committee reported in favor of limiting leases of agricultural lands to a period of 10 years. Mr. Benjamin S. Brundage, of Steuben, who opposed, throughout the convention, any limitation upon the right of landowners to lease their lands, moved to amend the section as reported by inserting after the word "years" the words "or natural life of the grantee." It would seem that the word "grantee" is a misprint for "grantor," for in support of his proposed amendment Mr. Brundage said: "The right to dispose of one's property during one's own life was a right which was inalienable, and which he could not divest himself of or others." Debates, Const. Conv. (1846; Argus Ed.) 804. The journal shows (pages 1326, 1328) that the amendment proposed by Mr. Brundage was defeated by 76 votes against and 5 for it. At different times when the question was before the convention various amendments were offered that the term be limited to 7 and to 21 years, but finally a term of 12 years was agreed upon. For an account of the proceedings on this subject, see pages 681, 782, 802 to 805, 815, and 907 of the Argus edition of Debates.

In the construction of constitutional and statutory provisions the mischief sought to be prevented should always be borne in mind, and the provision under consideration should be so construed as to prevent the mischief at which it was aimed. The mischief sought to be prevented was the creation of long terms by leases of agricultural

lands, reserving rent, which had been found by experience to be detrimental to the agricultural interests of all countries in which they had been permitted. The evils arising from leases in fee and from leases for life were the subject of debates not only in the convention, but before it convened they had been discussed in executive messages, in the legislature, and widely in the newspapers and pamphlets of the day. But in all the discussions the proposition was never advanced to abolish the right to lease agricultural lands for a long term of years, and preserve the right to lease such lands in fee or for lives. The state of affairs existing at the time a statute is passed or a constitution is adopted must be taken into consideration when interpreting either. This provision has been in force for more than 50 years, and no case has been found raising the question that leases for lives, reserving rent, of agricultural lands, were not within the section. In Van Rensselaer v. Dennison, 35 N. Y. 393, it is assumed that leases in fee are prohibited by the constitution. When the constitution was adopted, estates in land were (1 Rev. St. p. 722, § 1), as they now are (chapter 547, Laws 1896, § 20), divided into estates of inheritance, estates for life, estates for years, and estates at will, and by sufferance. This lease, if valid, created a freehold estate in the grantee during his life (1 Rev. St. p. 722, § 6; chapter 547, Laws 1896, § 24), out of which estate rent was reserved, which was precisely what the section of the constitution was designed to prevent. Under the common law and under our statutes estates for lives always have been, and now are, deemed superior to estates for years. It seems inconsistent to hold that the provision is limited in its application to leases for years of agricultural lands, and that it imposes no restriction upon leases for lives out of which the evils arose which the provision was designed to prevent. I am of the opinion that leases for lives of agricultural lands, reserving rent, are prohibited by the constitution, and that the lease under which the defendant claims is void.

It is urged that a person may waive a constitutional provision, or so conduct himself as to be estopped from asserting it. This is true when the provision simply relates to a private right, but it is not true when the provision is part of the public policy of the state. In such a case the provision may be asserted though it works a private wrong. A person cannot by waiver, or by acts which would usually raise an estoppel, validate a contract which is declared to be void by the fundamental law on grounds of public policy, nor can he estop his successor in interest from repudiating such a contract. In Clark v. Barnes, 4 N. Y. Wkly. Dig. 386, reversed in 76 N. Y. 301, it was held that the party to such a lease, executed under circumstances which made it very inequitable to rescind, might repudiate it. Clark was the owner in fee of a farm which was leased in 1841 for three lives. Barnes was in possession under the lease. An action was brought by Clark to recover possession, and Clark and Barnes entered into a written contract settling the action, and canceling the life lease, in consideration of the execution of leases of the same farm to Barnes,—one for eight years, expiring February 1, 1873, and another for twelve years, beginning February 1, 1873. The two leases

were executed.  Barnes occupied the farm under the first lease until the end of the term, and began to occupy under the second lease. Clark brought summary proceedings to recover possession upon the ground that the two leases were to be construed together, and were void.  It was held at general term that the leases were good for 12 years, and void only for the excess; but this judgment was reversed by the court of appeals, which held that a lease of agricultural lands for a longer period than 12 years, by which rent was reserved, was absolutely void.  In the case cited the lessee had surrendered a lease for lives in consideration of these leases for years, had occupied and improved the farm, but nevertheless it was held that, the lease being void under the constitution, it could be repudiated by the lessor.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

ADAMS, J., concurs.