Ruth ANDERSON, Plaintiff and Respondent,

v.

George C. BLIXT, Defendant and Appellant.

No. 7505.

Supreme Court of North Dakota.

Oct. 11, 1955.

Rehearing Denied Nov. 22, 1955.

Burnett, Bergesen, Whittlesey, Shermoen & Pancratz, Fargo, for defendant and appellant.

J. E. Hendrickson, Roy K. Redetzke, Fargo, for plaintiff and respondent.

JOHNSON, Judge.

This is an action to quiet title brought by Ruth Anderson, the record title owner of the Northwest Quarter (NW¼) of Section 12, Township 141 North of Range 51, Cass County, North Dakota. It is in statutory form.

The defendant asserts that he has an interest in the real property described in the complaint by reason of a lease with option to purchase dated August 11, 1950, and signed and acknowledged by Ruth Anderson, the plaintiff, and the defendant, George C. Blixt, and one Viktor Swanson, on that day, and by Andrew M. Anderson on October 2, 1950.

The lease with option to purchase, insofar as is pertinent to the issues, reads as follows:

"This Lease and Agreement Made this 11th day of August, 1950, by and between Andrew M. Anderson, Ruth Anderson, his wife, and Viktor Swanson, all of Argusville, North Dakota, hereinafter called the Owners; and George C. Blixt, of Argusville, North Dakota, hereinafter called the Tenant;

"Witnesseth; That the said owners, for and in consideration of the covenants and agreements hereinafter mentioned, to be kept and performed by the said tenant, his heirs, executors and administrators, have demised and leased to the said tenant, all those premises situate in the County of Cass and State of North Dakota, and described as follows, to-wit:

"The Northwest Quarter (NW¼) of Section Twelve (12) Township One Hundred Forty-One (141) Range Fifty-one (51), Cass County, North Dakota;

"*The term of this lease shall continue so long as anyone of the said owners is still alive or until the option hereinafter given shall have been fully exercised.* * * *

"In consideration of the mutual promises contained herein and of $1.00 and other valuable consideration, receipt of which is hereby acknowledged by the owners, the undersigned owners hereby agree that *if they should, individually or collectively, decide to sell his or her interest in the above described real property, that it is hereby given to the said tenant, George C. Blixt, his heirs, administrators, or executors, the option of purchasing the said farm at the agreed price of $65.00 per acre upon such terms as may then be agreed upon, with interest on any deferred payments at the rate of 3% per annum.*

"Upon payment of the same the said parties agree to deliver to the said purchaser, warranty deeds to said premises together with abstract of title showing good and merchantable title in themselves free and clear of all encumbrances.

"*This option shall continue in full force and effect until the same has been fully performed and shall be binding upon all the parties hereto, their heirs, administrators, executors and assigns.*" (Emphasis supplied.)

This case was tried to the district court of Cass County, North Dakota, and determined in favor of the plaintiff. The court held that the lease and option were wholly and completely null and void and of no legal effect whatsoever. The defendant appeals.

Other facts necessary to the complete understanding of the issues involved are as follows:

On May 29, 1950, Andrew M. Anderson, the then owner of the land involved in this action, executed a warranty deed to himself, Ruth Anderson, his wife, and to one Viktor Swanson "as joint tenants, and not

as tenants in common, their assigns, the survivor of said parties, and the heirs and assigns of the survivor." This deed was recorded in the office of the Register of Deeds, Cass County, on the 4th day of August, 1950, and appears in Book 207 of Deeds on page 633. The plaintiff, the wife of Andrew M. Anderson, did not sign as grantor, although the real property at the time was the homestead of her husband and herself. On August 11, 1950, Ruth Anderson, the plaintiff and respondent, and Viktor Swanson, and the defendant and appellant signed a lease with option to purchase, which is the subject matter of this action. This was later executed by Andrew M. Anderson. The defendant took possession of the premises under the lease and has been farming the land since. The lease with option was recorded in the office of the Register of Deeds of Cass County on the 8th day of November, 1950. Andrew M. Anderson, the plaintiff's husband, died on October 13, 1950, eleven days after he signed the lease and option to purchase. His estate was probated and final decree issued on the 22nd day of July, 1952. Under the terms of this decree the plaintiff acquired title to the property. On January 7, 1953, Viktor Swanson, one of the surviving grantees under the deed, sold and quit claimed his interest to Ruth Anderson. This deed was involved in a settlement of an action brought by Viktor Swanson against Ruth Anderson in which he had asserted a one-half interest in the land involved in this action. Thereafter she brought this action seeking the invalidity of both the lease and the option to purchase contained therein.

The lease and option cover agricultural land. It provides for delivery of one-half of the crops to the plaintiff, except corn, at an elevator to be designated from year to year. The lessee, Blixt, receives the corn crop in exchange for summer fallowing of an equal acreage planted to corn.

The defendant and appellant has assigned twelve specifications of error. The argument presented involves particularly three of these specifications. These are argued fully. With reference to the others the defendant and appellant refers to the argument made and says:

"If the specifications which are discussed in detail * * * are sustained, then the holding of the district court below must be reversed and judgment should be rendered in favor of the appellant and the validity of the lease with option to purchase sustained."

The defendant and appellant first argues specification No. 9, in which it is stated:

"The District Court erred in its memorandum opinion in holding that the lease provisions of the lease with option to purchase dated August 11, 1950, (Exhibit 2) violates the provision of Section 47–1602 of the North Dakota Revised Code for 1943 by a failure to set a definite term not to exceed ten (10) years."

The next specification argued is No. 7, in which the appellant states:

"The District Court erred in its Memorandum Opinion in holding that the lease with option to purchase dated August 11, 1950, (Exhibit 2), failed to create an option which the appellant can enforce."

Next the appellant sets forth and argues specification No. 8, which is stated as follows:

"The District Court erred in its memorandum opinion in holding that appellant waived or abandoned any right under the lease with option to purchase dated August 11, 1950, (Exhibit 2), by failure to assert a right to buy from Viktor Swanson at the time Exhibit 4, a quit claim deed from Viktor Swanson to Ruth Anderson, was executed."

■ The plaintiff and respondent contends that the specifications are invalid as they do not refer to the findings of the court or the conclusions of law, but to the memorandum opinion. Although a trial de novo was requested in the notice of appeal,

it was not made a part of the settled statement of the case. This court has held that such a request and demand for trial de novo is not sufficient. Retterath v. Retterath, 76 N.D. 583, 38 N.W.2d 409. Section 28–2732, NDRC 1943.

An examination of the specifications of error reveals a direct challenge of the trial court's conclusion,

"That the certain lease and option to purchase * * * is hereby declared wholly and completely null and void and of no legal effect whatsoever, * * *."

Most of the specifications refer to designated findings of fact or conclusions of law.

 The specifications of error must reveal the precise question presented to the trial court for determination; they must present clearly the question urged on the appeal. The issue in this case has become purely a question of law. The specifications directly put in issue, in this court, the lower court's solution of the legal issues presented. They disclose the precise question before the trial court. There can be no mistake about that. The specifications are sufficient. Under Section 28–1809, NDRC 1943, the appellant is required to serve with the notice of appeal, "a concise statement of the errors of law he complains of, * * *". This has been done. We will, therefore, consider the legal questions presented by the specifications of error.

It is contended that the lessee, Blixt, waived his right under the option and the option has expired. The abandonment and waiver thereof, it is explained, came about by reason of the fact that in the action brought by Viktor Swanson against Ruth Anderson, which resulted in a settlement by which Viktor Swanson quit claimed his interest, if any he had, to Ruth Anderson in settlement of the action, Blixt did nothing to assert his right at that time, and therefore, has waived and abandoned any right to purchase under the option. Blixt was not a party to the action brought by

Viktor Swanson against Ruth Anderson. The alleged interest of Viktor Swanson in the land was never offered to Blixt. As we shall see, Swanson had no interest to convey.

 The deed of Andrew M. Anderson to himself, his wife, and Viktor Swanson, without the signature of Ruth Anderson, his wife, as grantor, was void as to Viktor Swanson. Section 47–1805, NDRC 1943. Whether the deed is inoperative to convey any title to Andrew M. Anderson or to his wife, Ruth Anderson, we need not determine. The title of Andrew M. Anderson descended to his wife as his sole heir upon his death. His estate was probated and the property decreed to her. She was a party to the lease with option to purchase. The lease, if valid, therefore was binding upon her.

 In the jurisdictions where the law restricts the duration of a lease of agricultural land, before a court is justified in declaring it invalid, it must find that the lease is of agricultural land; that the use of the land for agricultural purposes is not excluded; that rent or service is reserved; and that the term is within the restriction.

The lease which is the subject of this action covers agricultural land. It provides for the use of the land for agricultural purposes. The tenant must account for one-half of the crops each year to the landlord. For the service of summer fallowing to rebuild the land he is entitled to the corn crop. Annual rent and service are involved. But is this a lease that extends for a longer period than ten years? That is the crucial question.

To assist in the determination of that question it is necessary to attempt to ascertain the true meaning of some of the provisions of the lease.

Two provisions of the lease involved in this action seem to come into conflict. Before determining whether the lease contravenes Section 47–1602, NDRC 1943, it will be necessary to construe and interpret the terms thereof with reference to these provisions.

The lease and the option to purchase are a part of the same instrument. They are inextricably interwoven and unseparable; they are not divisible. The consideration for the option to purchase is, in part at least, based on the covenants of the lease. The option is valid if the lease is valid and vice versa. The option will be in effect and valid, if the lease is valid, as long as the lease is binding on the lessors or the survivor of them, the plaintiff in this action.

The lease is to continue, "so long as any one of said owners is still alive, or until the option hereafter given shall have been fully exercised." The specific question presented is what effect on the clause just quoted in the lease is the provision thereof which states: "This option shall continue in full force and effect until the same has been fully performed *and shall be binding upon all the parties hereto, their heirs, administrators, executors and assigns*". (Emphasis supplied.)

Andrew M. Anderson died eleven days after the lease with the option to purchase was executed. Viktor Swanson never acquired any estate or interest in the real property covered by the lease. Ruth Anderson is the sole surviving lessor. The lease, if valid, therefore, continues as long as she lives, or for at least ten years, or until the option has been fully exercised. If the last clause quoted has no bearing upon the meaning of the *expressed term* of the lease, the validity of the lease is not in serious doubt. If it is interpreted so as to bind the heirs of the plaintiff, then there is a question whether the lease does not violate the terms of Section 47–1602, NDRC 1943, which states:

> "No lease or grant of agricultural land reserving any rent or service of any kind for a longer period than ten years shall be valid."

If the clause of the lease, "shall be binding upon all the parties hereto, their heirs, administrators, executors and assigns", is construed to make it binding on the heirs of the plaintiff, or her representatives, then this agricultural lease reserving rent may well extend beyond ten years from its execution.

Rules of construction relating to contracts generally govern with reference to the construction of a lease. 51 C.J.S., Landlord and Tenant, § 232, p. 849. Where one construction will make the lease legal and another one (that) will make it contrary to law, the former construction will be adopted, if reasonable. Knox v. Wolfe, 73 Cal.App.2d 494, 167 P.2d 3. The lease is to be construed as a whole to give effect to all its clauses, terms and provisions, if that can be done consistently with the rules. 51 C.J.S., Landlord and Tenant, § 232, p. 853.

When the lease with the option to purchase was executed by the parties, the record title to the land appeared in the name of three persons who signed it as lessors. It is noted that it is only the *option* provision of the lease that refers to it as being binding upon all parties, their heirs, administrators, executors and assigns. When the whole instrument is read with reference to its various terms, the state of the title at the time of its execution, and the fact that the option binds the lessors *"individually or collectively"* it appears reasonable that the option was only intended to be binding on the heirs of a deceased lessor or lessors, together with the survivor or survivors. In other words it was the intent that the survivor or survivors, and the heirs and representatives of a deceased lessor or lessors were bound to perform under the option. It also appears to be clear that the quoted provision of the option was not intended to apply to the heirs of the last surviving lessor because the lease by its terms was to endure only "as long as *any one* of said owners is still alive." Upon the death of the last owner or lessor, it was to terminate. Thus interpreted all clauses of the lease can be given full effect. This interpretation is further emphasized by the fact that if the lessee should die before the option is fully exercised, the option provision and the general provisions of the lease were made binding on his heirs, executors and administrators. We, therefore, conclude that the

term of the lease is for the duration of the life of Ruth Anderson, or for at least a period of ten years should she live that long.

With this construction of the lease in mind, we will now consider whether it contravenes the terms of Section 47–1602, NDRC 1943.

The lease is one for the life of the owner or owners and is also made binding on the heirs, personal representatives and assigns of any deceased owner, or until the option has been fully exercised. No one can now determine how long the surviving lessor will live. She may die before the expiration of ten years from the date of the complete execution of the lease. She may live beyond that time. The duration of the term of the lease is therefore indefinite. Its termination is dependent upon a contingency which may or may not happen within ten years.

"A lease for life, although it may extend for a period longer than that specified in the prohibition, is not within the prohibition; where the term is specified in the lease and exceeds the limitation, it is void per se, but where it is left indefinite and its termination depends upon the contingency of death, which may happen within the period of limitation, it cannot be said to be void ipso facto as being made for a period longer than that permitted by the restriction." 32 Am.Jur., Sec. 64, Landlord and Tenant, p. 80.

The case of Parish v. Rogers, 20 App. Div. 279, 46 N.Y.S. 1058, 1059, involved a lease which provided for a term for the lives of the lessor and his wife with rent payable to the lessor during his life and after his death to his wife. It was contended that the instrument was void as contravening the constitutional provision against leases of agricultural land reserving rent for more than twelve years. The lease was made in 1888 and the action was commenced in 1896, eight years later.

The court in discussing the contention said:

"If a lease or grant of an estate for life is to be judicially declared to be one 'for a longer period than twelve years,' and therefore obnoxious to the constitutional limitation, such adjudication must be founded, not upon the particular words or terms in which the prohibition is expressed, but rather upon some supposed principle of public policy."

Then the court went on to say:

"It will be observed that there is no declaration of intent to abrogate grants of life estates in agricultural lands in which rent or service of any kind shall be reserved. And, since the creation of such estates is not prohibited, either in expressed terms or by necessary implication, it ill becomes the judiciary to declare such prohibition upon a mere presumption of intention, nowhere indicated in the constitution. * * * Where the term is specified in the lease, and exceeds the limitation, it is void per se; *but where it is left indefinite, and its termination depends upon the contingency of death, which may happen within the period of limitation, it cannot be said to be void ipso facto, as being made for a period longer than 12 years.* * * * It does not appear, therefore, from the terms of the grant, that it will last longer than 12 years. *In respect to whether the grant is void upon its face, the words 'longer period' should be construed as meaning a definite period, and as not applicable to estates whose duration is wholly indefinite and uncertain.* This grant is not, by its terms, a lease 'for a longer period than twelve years,' but for an indefinite time, which can only be made definite or fixed by the happening of a contingency, viz. death, which may occur within the limitation. The instrument cannot, therefore, be said to create a term for a longer period than 12 years, within the meaning of the provision." (Emphasis supplied.)

In the case of Wegner v. Lubenow, 12 N.D. 95, 95 N.W. 442, 444, this court re-

fers to the Parish v. Rogers case and quotes therefrom with apparent approval. While Wegner v. Lubenow, supra, was decided upon a point not directly involved in the Parish v. Rogers case, this court has adopted its reasoning. After thoroughly discussing and reviewing the Parish v. Rogers case, our court says:

"We find it unnecessary to a proper decision of this case, however, to determine whether section 3310, Rev. Codes (now Section 47–1602 NDRC 1943), applies to life leases, or only to leases for definite terms, or whether a lease which violates said section is entirely void, or is void only as to the excess (see sections 3369, 3449, Rev. Codes), for the reason that, in our opinion, the lease involved in this case is not, in any event, such a lease as comes within the condemnation of said section. It is only leases 'in which shall be reserved any rent or service' that are made invalid, and, in our opinion, this lease reserves no rent or service."

In the case of Interurban Land Co. v. Crawford, C.C., 183 F. 630, it was held that the Alabama Statute, Code of 1907, Section 3418, which provides that no leasehold estate in land can be created for a longer term than twenty years, applies only to tenancies for terms of years, and is not appropriate to or a restriction on tenancies for the life of the tenant or another. The statute, the court held, applies only to such leasehold estates as by the terms of the lease must endure longer than twenty years, and has no application to those which may or may not endure that long, contingent on the happening of a future event.

The case of Aikins v. Nevada Placer, 54 Nev. 281, 13 P.2d 1103, was an action to quiet title. It involved certain mining claims. On November 28, 1927, one L. F. Clar, now deceased, was the owner of and in possession of ten of the twelve mining claims set up in the complaint. On said date Clar leased ten claims to the defendant Walker. The lease provided:

"'That the same shall be effective for a period of five years unless default be made prior thereto, and as long thereafter as the second party or his assigns may see fit to operate said property pursuant to the terms and conditions of said lease.'"

Walker assigned this lease on December 9, 1927, to the defendant corporation. The case involved a Nevada statute which reads:

"'No lands, town or city lots, or other real property, within this state, shall hereafter be conveyed by lease or otherwise, except in fee and perpetual succession, for a longer period than twenty years. All leases hereafter made contrary to the provisions of this act shall be void.'" St.1923 Nev. c. 175.

The court, in considering this law and the clause of the lease, says:

"It will be seen that the duration of this lease is dependent upon a contingency which may or may not happen within twenty years. We have found no case directly in point on the facts; but the case of Parish v. Rogers (Sup.) 40 N.Y.S. 1014, 1015, is strictly analogous."

The court further says:

"As it does not appear affirmatively from the lease that it will extend beyond the statutory limitation, we cannot, in view of the applicable rule of strict interpretation, declare it void." See also Waldo v. Jacobs, 152 Mich. 425, 116 N.W. 371 and comments thereon 17 A.L.R.2d 570.

It is argued that this court has designated Section 47–1602, NDRC 1943, as a statute against perpetuities, and that, therefore, the test as to whether or not the contract violates the statute is to be measured by possibilities and not actualities. It is asserted that the statute has been held to be one against perpetuities in the case of Johnson v. Armour & Co., 69 N.D. 769, 775, 291 N.W. 113, 116, 127 A.L.R. 828.

The opinion in that case states:

"The trial court, in its memorandum opinion, held that the contract was not void as offending the statute against perpetuities, or, in other words, that it was not a 'lease of agricultural land for a longer period than ten years', in which a rent or service has been reserved.

"The court was correct in this view."

This language, it is contended, amounts to a pronouncement by this court that the section is one against perpetuities. This is not borne out by the discussion in the opinion. The wording is perhaps an uncritical repetition of the language used by the trial court. This court no doubt was referring to the fact that this was not a lease of agricultural land for a longer period than ten years in which a rent or service had been reserved. It was not that type of a contract. After referring to Section 5289 of the Comp.Laws of 1913, now Section 47–1602, NDRC 1943, the court says:

"Such provision does not cover the facts in this case."

The language, if properly interpreted, would indicate that the court took the facts in the case out of the provisions of Section 47–1602, NDRC 1943. That is all that the quoted language indicates. We do not construe that the language quoted in this case amounts to a holding that Section 47–1602 is one against perpetuities.

We have found no decision which intimates that a similar statute or constitutional provision prohibiting the leasing of agricultural land beyond a designated number of years where an annual rent or service is reserved, is one against perpetuities. Strictly speaking, in this state we have no statute against perpetuities. The common law rule against perpetuities is not in force in this state. In this state there is no common law in any case where the law is declared by the code. Section 1–0106, NDRC 1943. Our statutes dealing with restraints on alienation are found in Chapter 47–02, NDRC 1943. Section 47–1602, NDRC 1943, is a part of Chapter 47–16 dealing with the leasing of real property. There is no support to be found anywhere for the designation of Section 47–1602 as one against perpetuities, other than the tenuous argument based upon the quotation from Johnson v. Armour & Co., supra.

We need not now determine whether this lease, if it should extend beyond ten years, is invalid as to the excess thereof. Suffice it to say that there is no proof available to show that the lease will extend beyond the term of ten years. If we were to so determine, such conclusion would be based on conjecture instead of a certainty. Only future events will determine whether the lease is one that extends beyond a term of ten years. If it should extend beyond ten years, and that becomes ascertainable, such issue would be a proper matter for determination at that time. We do not now decide whether this lease would be prohibited by Section 47–1602, NDRC 1943, should it extend beyond ten years from the date of its complete execution by the parties.

An option to purchase is not a sale of the property or an agreement to sell the property. It is a right to exercise a privilege. The option itself does not pass any right or estate in the land and does not create in the lessee any title to the land either legal or equitable. In the lease under consideration the appellant may never have any right whatsoever, since it is entirely possible that the lessor or the owner of the property may never decide to sell. In that event the lessee has nothing. In the case of Larson v. Wood, 75 N.D. 9, 24, 25 N.W. 2d 100, 107, this court said:

"In State v. Crum, 70 N.D. 177, 292 N.W. 392, 393, we show that, 'An option to purchase property is a mere privilege to buy, given by the owner of the property to another. The optionee is not a purchaser.' The defendants Wood had a privilege to buy in accordance with certain terms. If they accepted that privilege by exercising the right of option within the time speci-

fied it would then become a mutual contract, and could be enforced against Larson, had he thereafter failed to perform." Hultberg v. City of Garrison, 79 N.D. ——, 56 N.W.2d 319, 322.

"An option, originally, is neither a sale nor an agreement to sell. It is simply a contract by which the owner of the property agrees with another person that he shall have the right to buy his property at a fixed price within a time certain. The owner does not then sell his land or any interest in it. * * * By the option renewal contract the tenant did not obtain any right or interest in lands, either vested or contingent, nor any contract for such right, but he did obtain a right to obtain such right or interest at any time during the life of the lease." Keogh v. Peck, 316 Ill. 318, 147 N.E. 266, 269 and 271, 38 A.L.R. 1151.

▮▮▮ An option to purchase property is a mere privilege given by the owner to the optionee and does not constitute the optionee a purchaser of the property, nor give him any right or interest in the property until he accepts the privilege by exercising his right of option within the term of the lease. It is not an interest in the real property. It creates no right either legal or equitable in the appellant.

Yet such a right has been recognized. Hayes v. O'Brien, 149 Ill. 403, 37 N.E. 73, 23 L.R.A. 555; Brenner v. Duncan, 318 Mich. 1, 27 N.W.2d 320, 321. In this last case, the option was designated as "first preference * * * to purchase." Under the facts involved here the lease with the option to purchase amounted to the first parties giving the second party the privilege of purchasing the property upon the terms stated in the option, if and when decision to sell is made. When that occurs the property must be offered first to the lessee, or his heirs, or representatives.

In view of our determination that the lease between the parties is of indefinite duration, and may not necessarily extend for a longer period than ten years, and that the option will expire upon the termination of the lease, we do not find its necessary to discuss the application of Section 47-0227, NDRC 1943, to the option provision of the lease. It has no bearing on the issue as we construe the lease-option instrument.

The judgment of the trial court is reversed.

BURKE, C. J., and SATHRE, MORRIS, and GRIMSON, JJ., concur.