Frank X. KOLLING and Agnes Theresia Kolling, Plaintiffs-Appellants,

v.

The GOODYEAR TIRE and RUBBER COMPANY, an Ohio Corporation, Defendant-Appellee.

Civ. No. 9489.

Supreme Court of North Dakota.

Nov. 28, 1978.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for appellants; argued by James D. Geyer, Dickinson.

Reichert, Howe, Hardy, Galloway & Jorgensen, Dickinson, for appellee; argued by Donald L. Jorgensen, Dickinson.

PAULSON, Justice.

Frank X. Kolling [hereinafter Kolling] and his wife, Agnes T. Kolling, have appealed to this Court from the judgment of the Stark County Court of Increased Jurisdiction dismissing their forcible detainer action against The Goodyear Tire and Rubber Company [hereinafter Goodyear] which leases certain premises in the City of Dickinson from the Kollings for use as a tire store. This appeal is consolidated with the Kollings' appeal from the order of the Stark County District Court denying them a trial de novo based upon jurisdictional grounds. The Kollings brought their forcible detainer action when Goodyear refused to vacate the leased premises after it had been given notice that its lease had been terminated because of alleged zoning ordinance infractions which violated the lease. The Stark County Court of Increased Jurisdiction found that Goodyear had fully complied with the terms and conditions of the lease and that the Kollings did not properly terminate the lease. Accordingly, the court held that Goodyear was not in violation of the provisions of the lease and was entitled to continued possession of the leased premises. We affirm. We also affirm the district court's order dismissing the Kollings' appeal for lack of jurisdiction.

In 1966, Goodyear and the Kollings signed a lease which provided that the Kollings would construct a building on several lots owned by them in the City of Dickinson and would lease the premises to Goodyear for a term of ten years. In addition, Goodyear was given the option to lease the premises for three additional five-year terms. The rental fee was six hundred twenty-five dollars ($625.00) per month for the duration of the lease.

In 1967, Kolling obtained a building permit from the City of Dickinson and constructed a building for use as a tire store pursuant to Goodyear's plans and specifications. Goodyear's plans specified that eleven off-street parking spaces were to be constructed on the premises. Although the Dickinson City Code, at the time, required that a newly-constructed retail or service establishment the size of the Goodyear store have a minimum of thirty off-street parking spaces, the building permit which was issued required only eleven off-street parking spaces.

Goodyear began storing new and used tires on the parking lot area surrounding the tire store in areas specifically designated for off-street parking approximately five years before the Kollings brought this forcible detainer action. Kolling, at that time, orally objected to the storage of tires and the resultant decrease in parking spaces because he believed that the storage violated Dickinson's zoning ordinances and the lease.

The lease provides, in pertinent part:

"3. Lessee is hereby permitted to use and occupy the premises for the sale of such products and furnishings of such services as in Goodyear Service Stores generally, including but not limited to, selling to consumers and to others, tires, tubes, oil and other lubricants, motor and tire accessories and kindred products, and for the servicing, storing and repairing of motor vehicles, tires, tubes, accessories and kindred products, or *for any other lawful purposes.* (Emphasis added.)"

"16. If Lessee shall be in default . . in the performance of any of the covenants or conditions hereof, and shall fail to correct and rectify any such default within thirty (30) days from the receipt of written notice thereof from Lessor, . . . Lessor may enter into said premises, and again have and repossess the same as if this lease had not been made and shall thereupon have the right to cancel this lease, without prejudice, however, to the right of Lessor to recover all rent due to the time of such entry. . . . ."

Although the Dickinson City Code required thirty off-street parking spaces in 1967 when the tire store building was built, the building permit was issued with only eleven parking spaces specified in the building plans. Therefore, it appears that Goodyear is not required to have more than eleven parking spaces on the tire store lot. Kolling contends that § 34–6, Dickinson City Code,[1] precludes Goodyear from decreasing the number of required off-street parking spaces without a written variance from the board of adjustment of the City of Dickinson pursuant to § 34–28(b), Dickinson City Code.[2]

In addition, the Kollings contend that Goodyear's storage on the parking lot of used tire carcasses not meant for resale constituted a violation of § 34–144, Dickinson City Code, which prohibits the open storage of materials "not on display for direct sale . . . to the ultimate consumer."[3]

The alleged zoning violations are as follows:

(1) The storage of tires on the northeast corner of the parking lot that blocked parking spaces and decreased visibility at the intersection;

(2) The storage of tires on the west side of the parking lot that blocked five parking spaces; and

(3) The storage of used tire carcasses and other rubbish not meant for resale on the parking lot itself rather than in an enclosed area.

Kolling, beginning in 1972 or 1973, orally complained to Goodyear about the storage of tires on the parking lot. However, no official action was taken by the City of Dickinson until 1975. On October 10, 1975, Edward Karsky [hereinafter Karsky], the building inspector for the City of Dickinson, wrote Goodyear and requested that the tires and other merchandise be removed from the northeast corner and west side parking areas. Karsky testified at the trial that the tire storage on the northeast corner created visibility problems at the intersection and violated the zoning ordinance requiring that a business establishment maintain a certain number of off-street parking spaces. When Goodyear failed to correct the tire storage situation, Karsky wrote Goodyear on January 20, 1976, and demanded that the tires be removed within ten days. At a subsequent meeting with Goodyear Karsky learned that Goodyear was extremely short on storage space because it had substantially increased its inventory to prepare for a pending rubber strike. Karsky then orally granted Goodyear permission to temporarily store tires on the west parking area but required that all tires be removed from the northeast

---

1. *Section 34–6. Scope of chapter.* Except as may otherwise be provided in article VII of this chapter, all buildings erected hereafter, all uses of land or buildings established hereafter, . . . and all enlargements of or additions to existing uses occurring hereafter shall be subject to all regulations of this chapter which are applicable to the zoning districts in which such buildings, uses or land shall be located.

2. *Section 34–28. Dickinson City Code Variance of front yard and parking requirements.* The board may, upon written application therefor filed with the secretary, make the following additional variations, adjustments and modifications after a hearing thereon with a reasonable time for such hearing fixed and due notice thereof given to the parties:

   (a) . . . .
   (b) Vary or modify the requirements for the provision of parking spaces.

3. *Section 34–144. Dickinson City Code Storage of merchandise; display of merchandise for*

sale. All materials, supplies, merchandise or other similar matter not on display for direct sale, rental or lease to the ultimate consumer or user shall be stored within a completely enclosed building within the C–2 district or within the confines of a one hundred percent opaque wall or fence not less than five feet high.

Merchandise which is offered for sale as described heretofore may be displayed beyond the confines of a building in the C–2 commercial district, but the area occupied by such outdoor display shall not constitute a greater number of square feet than ten percent of the ground floor area of the building housing the principal use, unless such merchandise is of a type customarily displayed outdoors such as garden supplies. No storage of any type shall be permitted within the one-half of the required front or side street setback nearest the street nor within any required interior side or rear setback.

corner parking area. No permanent written variance was granted. Goodyear complied with this agreement.

On May 14, 1976, Kolling wrote a letter to Goodyear's home office in which he objected to Goodyear's continued storage of tires on parking spaces because it allegedly violated the lease and zoning ordinances. He requested that Goodyear comply with the Dickinson zoning requirements.

In June of 1976 Goodyear and the City of Dickinson reached an agreement on the tire storage problem. Karsky gave Goodyear oral permission to store tires on the west side parking area not less than 20 feet from the sidewalk. No written variance was granted. The Goodyear home office wrote Kolling in July of 1976 to inform him of the tire storage agreement which had been approved by Karsky.

On August 29, 1977, Goodyear wrote Kolling to notify him of its decision to exercise its option to renew the lease for a five-year period. Kolling responded with a letter on September 26, 1977, in which he refused to recognize Goodyear's option to extend the lease because he believed that Goodyear had violated the lease by continuing to store tires in violation of city zoning ordinances.

Goodyear wrote Kolling on October 4, 1977, and stated that the premises could be used for any lawful purpose, that the June, 1976, agreement with Karsky allowed the storage of tires on the west side parking area, and that Kolling should advise Goodyear if the tires were not being stored in accordance with the agreement.

On October 25, 1977, Kolling sent Goodyear a Notice of Termination of the lease which was to be effective December 1, 1977. When Goodyear failed to return the tire store to Kolling on December 1, 1977, Kolling served a Notice to Quit and Vacate and commenced a forcible detainer action to evict Goodyear on December 8, 1977.

The Stark County Court of Increased Jurisdiction heard the forcible detainer action on January 19, 1978, and entered a judgment for Goodyear dismissing the Kollings'

claim on February 8, 1978. The Kollings then appealed to the Stark County District Court for a trial de novo pursuant to § 33–11–16, N.D.C.C. The district court dismissed the Kollings' appeal on April 13, 1978, because it lacked jurisdiction. On April 14, 1978, the Kollings appealed to the North Dakota Supreme Court from the judgment of the Stark County Court of Increased Jurisdiction. The Kollings also appealed the district court's order dismissing their appeal for a trial de novo. The parties have agreed to consolidate the two appeals before this Court.

During the trial in the county court of increased jurisdiction, the Kollings presented certain relevant evidence which is summarized as follows:

1. Dickinson's zoning ordinances prohibit the outdoor storage of items not meant for resale;

2. The Dickinson zoning ordinances prohibit the change of a use, such as a decrease in the number of required parking spaces, without a written variance;

3. Goodyear was in violation of certain zoning ordinances between October, 1975, and January, 1976;

4. After January, 1976, Goodyear had stored tires on authorized parking spaces without receiving a written variance; and

5. After January, 1976, Goodyear occasionally stored tire carcasses not meant for resale on the parking lot.

Goodyear presented the following relevant evidence at trial which is summarized as follows:

1. Goodyear had corrected the January, 1976, violations to the satisfaction of Karsky, the city building inspector;

2. Goodyear and Karsky reached an oral agreement in June, 1976, to allow the permanent storage of tires on the west side parking spaces greater than 20 feet from the sidewalk;

3. Karsky testified that Goodyear was not presently in violation of any zoning ordinances and had never been issued a citation for a zoning violation; and

4. The Kollings' primary reason for wanting to terminate the lease may have been because the present rental value of the property greatly exceeds the $625 monthly rental specified in the lease.

After hearing testimony the trial court made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

1. . . .
2. . . .
3. That subsequent to the signing of the said lease, the Plaintiffs constructed a building upon said property, in accordance with the plans and specifications supplied by the Defendant.
4. That, pursuant to the requirement of the City of Dickinson, a portion of said property was designated and marked off as parking space.
5. That the Defendant has, for approximately five (5) years, use [sic] a portion of said "parking" for the storage of new and used tires.
6. That the Defendant has, during five (5) years, used a portion of said "parking" space for the storage of rubbish and carcasses not meant for resale.
7. . . .
8. That the General Inspector for the City of Dickinson, Edward Karsky, notified the Defendant on October 10, 1975 that the storage of tires and other merchandise must be discontinued by October 31, 1975.
9. That on January 20, 1976, Mr. Karsky granted a ten (10) day extension to the Defendant.
10. That the Plaintiffs notified the Defendant, by letter dated May 14, 1976, that they felt that the Defendants were in violation of the lease of September 26, 1966.
11. That subsequent to May 14, 1976, and prior to July 16, 1976, the City of Dickinson and the Defendant thru the efforts of Edward Karsky, General Inspector and Robert Kordonowy, Store Manager, reached an agreement as to the storage of tires and merchandise in the areas designated as "parking."
12. . . .
13. . . .
14. . . .
15. . . .
16. That the present rental value of the afore-described real property is approxiamately [sic] ($6.00) six dollars per square foot, or approxiamately [sic] $36,000 annually.
17. . . .
18. . . .

## CONCLUSIONS OF LAW

1. . . .
2. . . .
3. That the Defendant has fully complied with the terms and conditions of said lease to the present date.
4. That the Plaintiff did not lawfully terminate said lease.
5. That the Defendant is not a "hold over tenant" within the meaning of § 33–06–01 N.D.C.C. as amended.
6. That the Defendant is entitled to the quiet possession of said real property.
7. That the Defendant is entitled to an Order dismissing the Plaintiffs claim."

The following issues are raised for appeal:

1. Did the district court err in dismissing the Kollings' appeal for a trial de novo based upon lack of jurisdiction?
2. Did the Kollings' acceptance of rental payments from Goodyear after it had allegedly violated the lease constitute a waiver of the Kollings' right to terminate the lease? and
3. Did the trial court err in finding that Goodyear had fully complied with the lease?

■ The first issue involves the district court's dismissal of the Kollings' appeal for a trial de novo following the Stark County Court of Increased Jurisdiction's dismissal of their forcible detainer action. According to § 33–06–01, N.D.C.C., a forcible detainer action is to be heard in the county justice court. The Kollings contended in their brief that they were entitled to a trial de novo in district court because the county court of increased jurisdiction had been sitting as a county justice court when it heard the forcible detainer action and the decision of a county justice court is appealable to the district court. A perusal of the jurisdictional and procedural statutes of Chap. 27–08, N.D.C.C., that control county courts of increased jurisdiction indicates that the Kollings' claim is without merit. Additionally, the Kollings' attorney conceded in oral argument that the district court lacked jurisdiction to grant a trial de novo.

Section 27–08–20, N.D.C.C., provides that a county court which has been given increased jurisdiction shall retain its prior county justice court jurisdiction and shall gain additional jurisdiction from the district court and from justices of the peace. The Stark County Court of Increased Jurisdiction had jurisdiction over the forcible detainer action because it retained the forcible detainer jurisdiction that it previously had as a county justice court.

Section 27–08–24, N.D.C.C., which sets forth the procedure to be used in appealing a judgment of a county court of increased jurisdiction, provides in pertinent part:

"Provisions of laws and rules of practice and procedure applicable to the District Courts in civil and criminal actions, including those relating to . . . appeals to the Supreme Court . . . shall apply to county courts with increased jurisdiction, except that . . ."

None of the exceptions to the statute is applicable here. Therefore, the appeal from the county court of increased jurisdiction in the present case must be taken in the same manner as an appeal from a district court.

Section 28–27–01, N.D.C.C., provides that appeals from district courts are to be taken directly to the North Dakota Supreme Court. Accordingly, the Kollings' appeal from the Stark County Court of Increased Jurisdiction must be taken to the North Dakota Supreme Court.

We hold that the district court did not err in dismissing the Kollings' appeal for a trial de novo because it lacked jurisdiction.

We will next consider whether or not the Kollings waived the right to terminate the lease by accepting rent after they became aware of Goodyear's alleged lease violations.

Goodyear raised the waiver issue at trial in its final written argument. The trial court made no findings or conclusions regarding waiver. Goodyear again raised the waiver issue in its appellate brief and during its appellate argument before this Court. It did not, however, perfect a cross-appeal on the issue pursuant to Rule 3, N.D.R.App.P.

■ Rule 3, N.D.R.App.P., sets forth the procedure for taking an appeal. An appellee may take a cross-appeal but he must comply with the statutory requirements for taking and perfecting an appeal even though the appellant has already perfected his own appeal. *Fowler v. Delzer,* 177 N.W.2d 756, 759–60 (N.D.1970).[4]

■ In this case, Goodyear failed to properly file and perfect a cross-appeal on the waiver issue. In addition, Kolling did not raise the waiver issue on appeal. Therefore, we have no jurisdiction to consider the question of waiver in this case.

The final issue involves the trial court's "conclusion of law number 3" that Goodyear had fully complied with the terms and conditions of its lease and was entitled to continued possession of the leased premises.

---

4. Although *Fowler v. Delzer, supra,* involved the old statutes governing appeals, the present appellate rules also require that an appeal be properly filed and perfected before this Court can consider the issue.

In deciding whether Goodyear's alleged improper use of the leased premises justified the Kollings' termination of the lease pursuant to paragraphs 3 and 16 of the lease and § 47–16–16 of the North Dakota Century Code, we must consider the trial court's findings of fact and conclusions of law.

■ According to *Dittmer v. Nokleberg,* 219 N.W.2d 201, 209 (N.D.1974), the question of whether there has been substantial performance of a contract is a question of fact. The question of whether a lease has been fully complied with should also be treated as a finding of fact because the rules of construction relating to contracts generally apply to the construction of leases. *Drees Farming Ass'n. v. Thompson,* 246 N.W.2d 883, 885 (N.D.1976) and *Anderson v. Blixt,* 72 N.W.2d 799, 804 (N.D.1955).

■ The trial court's detailed findings of fact indicate that it considered all relevant factors in finding that Goodyear had fully complied with the lease. The trial court considered the relevant Dickinson zoning statutes, heard testimony from the witnesses and was able to observe their credibility.

The Kollings' primary basis for attempting to terminate the lease involved the storage of tires on parking spaces. The trial court's finding of fact that Karsky and Goodyear reached an agreement regarding the storage of tires on parking spaces strongly supported its finding that Goodyear had fully complied with the lease. In addition, the court was obviously impressed with Karsky's testimony that Goodyear had corrected its zoning violations in early 1976, had never been issued a zoning citation and, at the time of trial, was not in violation of any zoning ordinances. We assume that Karsky acted on behalf of the governing body and there has been no evidence submitted to the contrary.

We conclude that Goodyear substantially complied with the provisions of the lease, which is sufficient in this instance, although Goodyear may not have technically fully complied with the lease.

From a careful examination of the record, we conclude that the trial court's findings of fact were not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. In addition, we conclude that the trial court's "conclusion of law number 3" that Goodyear had fully complied with the terms and conditions of the lease was supported by the findings of fact. Therefore, we hold that the trial court's conclusions were proper that the Kollings did not lawfully terminate the lease; that Goodyear is not a holdover tenant within the meaning of § 33–06–01, N.D.C.C.; that Goodyear is entitled to quiet possession of the leased premises; and that the Kollings' claim should be dismissed.

By deciding this case in Goodyear's favor we do not sanction its violation of any Dickinson zoning ordinances. Goodyear must comply with all applicable federal, state and local laws. The Kollings presented evidence that Goodyear had violated zoning ordinances in the past as indicated by "finding of fact number 8". The Kollings also presented some arguments that Goodyear was still violating zoning ordinances. However, the Kollings did not sufficiently meet their burden of proof of zoning violations to justify the termination of Goodyear's lease.

The judgment of the Stark County Court of Increased Jurisdiction and the order of the Stark County District Court dismissing the appeal are affirmed.

ERICKSTAD, C. J., and VandeWALLE and SAND, JJ., concur.

PEDERSON, Justice, dissenting.

Whether conclusion of law # 3 is or is not actually a finding of fact is significant insofar as scope of review under Rule 52(a), N.D.R.Civ.P., is concerned. But, regardless of that, the decision must be logical before I can accept it. To that extent, the structure of a decision, like a syllogism, shows a deductive, logical scheme consisting of a major premise and a minor premise and then a conclusion that follows therefrom.

The error made by the trial court here is that it misapplied the rule. "(1) All dogs have four legs—(2) This chair has four legs —(3) This chair is a dog." First premise: the law prohibits storage of garbage in an

open parking lot. Second premise: the city inspector doesn't object to the storage of garbage in the parking lot. Conclusion: the lease which requires compliance with all laws has not been violated.

The majority makes an assumption which was not made by the trial court and which no one urged us to make, and reaches conclusions not reached by the trial court. This is not my understanding of the scope of review that this court can make under Rule 52(a). If we misunderstand the basis of the trial court's decision, as reflected in its findings of fact and conclusions of law, we ought to remand for the preparation of more understandable findings. *Ellendale Farmers Union Cooperative Ass'n v. Davis,* 219 N.W.2d 829 (N.D.1974). See also *Struchynski v. Decker,* 194 N.W.2d 741 (N.D. 1972).